**Clarence T. HATLESTAD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 90–103.

United States Court of Veterans Appeals.

Sept. 15, 1993.

Ronald L. Smith, Washington, DC, was on the pleadings, for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, MANKIN and STEINBERG, Judges.

STEINBERG, Judge:

In a March 6, 1991, opinion in this case, the Court vacated a December 5, 1989, decision of the Board of Veterans' Appeals (Board or BVA) denying entitlement to a total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU rating) and remanded the record to the Board for readjudication in accordance with the Court's opinion. The Court retained jurisdiction, *Hatelstad v. Derwinski*, 1 Vet. App 164 (1991) [hereinafter *Hatlestad I*]. On June 7, 1991, the Board issued a 29–page decision again denying a TDIU rating, and the appellant sought review of that decision. On December 4, 1991, the appellant moved for a further remand to the Board, for the purpose of submitting additional evidence to the Board, and on December 20, 1991, the Secretary of Veterans Affairs (Secretary) opposed that motion.

On July 8, 1992, the Court issued its second opinion in this case, denying the appellant's motion for remand and affirming the June 1991 BVA decision. *Hatles-*

tad v. Derwinski, 3 Vet.App. 213 (1992) [hereinafter Hatlestad II]. In affirming the BVA decision, the Court stated that, because the appellant had not challenged the Board's compliance with the Court's Hatlestad I remand instructions, the Court would find noncompliance only if the Board had "grossly" failed to comply. Hatlestad II, 3 Vet.App. at 215. On July 22, 1992, the appellant filed a motion for en banc review of that decision, asserting that his motion for remand was not filed in lieu of a brief and that the Court, upon denying that motion, should have allowed him to file a brief on the merits of the case. In a September 11, 1992, order, the Court, sua sponte, held in abeyance the issuance of its judgment pursuant to the July 8, 1992, opinion, held in abeyance the motion for en banc review, and directed the Secretary to file a supplemental designation of the record. Id. at 218. The parties subsequently filed briefs addressing the merits of the appeal.

The Court has, sua sponte, reconsidered its July 8, 1992, Hatlestad II opinion and now issues this opinion in supplementation of that opinion. The July 8, 1992, opinion is modified only to the extent that the June 1991 BVA decision is not affirmed as is stated in the first and last paragraphs of that opinion. Instead, the Court will vacate that June 1991 BVA decision and remand the matter for readjudication consistent with this opinion. The appellant's motion for en banc review has been denied in a separate order issued this date.

## I. Background

The veteran's service-connected disabilities are as follows: (1) A disability of the left lower extremity (including the tibia, fibula, os calcis, second, third, and fourth metatarsals, and the proximal phalanx of the great toe) resulting from a gunshot wound, rated 40% disabling; (2) traumatic arthritis of the lumbar spine, rated 20% disabling; (3) residuals of a gunshot wound to the abdomen with perforation of the ileum, rated 10% disabling; (4) traumatic arthritis of the left knee, rated 10% disabling; (5) traumatic arthritis of the right knee, rated 10% disabling; and (6) hepatitis, rated noncompensable. R. at 48–49.

His combined rating is 70%. Ibid. The veteran also has several non-service-connected disabilities, including congestive heart failure, atrial fibrillation (very rapid uncoordinated contractions of the atria of the heart, WEBSTER'S MEDICAL DESK DICTIONARY 56 (1986) [hereinafter WEBSTER'S]), hypertension, a thyroid tumor, a gastric disorder, Meniere's disease (a disorder of the inner ear that is marked by recurrent attacks of dizziness and deafness, WEBSTER'S, at 422), and diabetes mellitus. R. at 11–13, 63–64, 81–83. He asserts that his service-connected disabilities alone are so disabling as to render him unemployable.

In the Hatlestad I opinion remanding the record to the BVA, the Court directed that the Board address six specific questions which required the Board to resolve apparent conflicts between the applicable Veterans' Administration (now Department of Veterans Affairs) (VA) regulations concerning unemployability; to resolve apparent evidentiary conflicts as to the veteran's education level and hospitalization dates; to discuss the extent to which non-service-connected disabilities were a factor in the veteran's unemployment and alleged unemployability; to discuss the extent to which pain was a factor in the veteran's unemployment; to discuss the veteran's capacity for work; and to discuss the credibility of the veteran's sworn testimony as evidence. Hatlestad I, 1 Vet.App. at 170. In the Hatlestad II opinion after the Board's extensive June 1991 decision on remand, the Court stated that, although it did not agree fully with the BVA's interpretation of the applicable VA regulations pertaining to unemployability, the Board on remand had not "grossly" failed to comply with the Board's remand instructions so as to warrant an additional remand or reversal in the absence of a specific challenge by the appellant to the Board's compliance with the remand instructions. Hatlestad II, 3 Vet. App. at 213–15.

In his February 18, 1993, brief and April 6, 1993, reply brief, which the Court has considered in reconsidering its Hatlestad II opinion, the appellant asserts that the Board's June 1991 decision contains the

following four prejudicial errors: (a) Clear error in the Board's reliance upon a September 6, 1988, VA medical record (apparently a report of outpatient treatment) as evidence that the veteran is not unemployable, and, specifically, in the BVA conclusion that the notation on that report that the veteran felt good and was able to break up a sidewalk with a sledgehammer reported a contemporaneous, rather than an earlier, event; (b) failure by the Board to comply with one of the Court's remand instructions directing the BVA to explain the extent to which the veteran's non-service-connected disorders caused his alleged unemployability; (c) denial of the veteran's constitutional due process rights by the Board's reliance upon medical treatises as evidence to reject evidence favorable to the veteran without giving him prior notice of its intent to rely upon such treatises and an opportunity to respond to them; and (d) failure by the Board to consider and discuss two VA orthopedic examination reports in the record which supported the veteran's claims of severely disabling pain due to his service-connected disabilities. The Secretary, in his March 24, 1993, brief, urges affirmance of the BVA decision.

## II. Analysis

### A.

The appellant asserts that the BVA committed clear error, requiring reversal, in basing its denial of his TDIU claim in large part upon a September 6, 1988, VA physician's treatment note, which stated of the veteran: "Feels quite good[;] able to break up sidewalk w/sledge hammer & remove w/trailer tractor". R. at 7. In its June 7, 1991, decision, the BVA placed substantial reliance upon that treatment note as demonstrating that the veteran is not unemployable due to his service-connected disabilities, and also as adversely affecting the credibility of the veteran's complaints of disabling pain and inability to work. *Clarence T. Hatlestad*, BVA 91-__, at 23–24, 27 (June 7, 1991). The appellant asserts that the Board's reliance upon that treatment note was based upon an inference that "the event reported in the note occurred proximately thereto", but that "[t]here is no rational basis upon which the Board could determine whether the incident reported took place in September of 1988, September of 1983, or anytime in between", and that the Board's reliance upon that evidence was clearly erroneous. Br. at 14. He asserts that if the Board intended to rely upon that treatment note, it was required to undertake further development to ascertain when the incident occurred.

In his December 20, 1991, opposition to the appellant's December 4, 1991, motion for remand, the Secretary asserted that the BVA properly viewed the September 1988 treatment note as relating a contemporaneous event reported by the veteran. He stated that the evidence of record shows that the same VA physician who wrote the September 16, 1988, treatment note was seeing the veteran periodically (*see* R. at 6–8; containing treatment notes dated July 15, September 6, and September 16, 1988, from the same VA physician), and that, therefore, it was logical to conclude that the treatment note most likely contained an evaluation of the veteran's then-current condition as part of an ongoing process of monitoring and treating the veteran's disabilities. The Secretary further stated that the fact that the note is written in the present tense suggests that it referred to a contemporaneous event. Finally, he notes that the appellant had not submitted any evidence to suggest that the September 6, 1988, report did not relate to a contemporaneous event.

 The Court finds no reversible error in the Board's reliance on the September 6, 1988, VA medical record, and in the Board's implicit conclusion that that record pertained to a contemporaneous incident. The determination as to when this incident occurred is a determination of fact, which this Court reviews under a "clearly erroneous" standard. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski*, 1 Vet. App. 49, 52–53 (1990). Pursuant to that standard, if there is "a 'plausible' basis in the record" for the Board's findings of fact, the Court may not overturn them. *Gilbert*, 1 Vet.App. at 53. Because the September 6, 1988, VA medical record was

apparently made in the context of an ongoing treatment relationship, because it was written in the present tense, and because there is no evidence suggesting that the incident had occurred a significant time prior to the date of that medical record, there is "a 'plausible' basis in the record" for concluding that the VA physician's statements related to a then-current incident.

■ The Board is required to provide a statement of the reasons or bases for its findings and conclusions on "all material issues of fact or law presented on the record". 38 U.S.C.A. § 7104(d)(1) (West 1991); *Gilbert*, 1 Vet.App. at 56–57. Although the Board in this case did not expressly discuss the basis for its implicit conclusion that the VA medical record pertained to a then-current incident, the Court holds that on the facts of this case, where there was *no* evidence or argument in the record before the Board to suggest that the record related to an incident occurring a significant time prior to the date of that record, the Board did not err in failing to discuss that issue expressly. *Cf. Sellz v. Derwinski*, 2 Vet.App. 299, 301 (1992) (BVA's failure to provide reasons or bases as to relationship between veteran's alcoholism and service-connected psychiatric disorder was "not prejudicial" when evidence indicated that alcoholism was not currently a problem); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (remand for statement of reasons or bases on a particular issue not required in the face of "overwhelming evidence in support of the result" reached by the BVA).

### B.

■ The appellant asserts that the BVA failed to comply with the Court's *Hatlestad I* remand instruction directing the Board to explain "the extent to which nonservice-connected conditions are a cause of the appellant's unemployment and alleged unemployability, taking into account the treating VA physician's uncontroverted statement and the appellant's testimony under oath that those conditions are not the cause." Although the Board did not comply literally with this instruction, its decision overcomes this deficiency, for the reasons set forth below, by complying with applicable law and regulation as to the veteran's entitlement to a TDIU rating.

The appellant points out that the Board concluded in its decision on remand that he had ceased his full-time work as a pressman in October 1987 and had ceased his part-time work as a salesman in early 1988 due in whole or in part to his non-service-connected disabilities. *Hatlestad*, BVA 91–___, at 21–22. The appellant does not specifically assert that those BVA findings are in error but, rather, states that they are unresponsive to the Court's instruction. He states that "[t]he central issue to be decided in this case is whether [his] service-connected disabilities rendered him unable to engage in substantially gainful employment on and after August 30, 1988" (the date he filed his claim for a TDIU rating), and that "[t]he fact that he may previously have been temporarily disabled by a non-service-connected disability prior to August 30, 1988, is irrelevant if, as the evidence shows in this case, [he] recovered from such non-service-connected disabilities to the extent that they no longer interfere with employment." Br. at 18.

The appellant is correct that the Board's decision fails to explain what effect, if any, the veteran's non-service-connected disabilities *currently* have upon his employability. The Board determined that he had ceased employment in 1987 and 1988 due in whole or in part to his non-service-connected disabilities, including a heart disability and Meniere's disease. *Hatlestad*, BVA 91–___, at 21–22. The Board further noted that the appellant's treating VA physician had stated in a May 1989 letter that the veteran's non-service-connected disabilities were then well controlled with medication and would not restrict his employability. *Id.* at 22; R. at 63–64. Yet, the Board did not state any explicit conclusion, based on evaluation of the evidence of record, as to whether the veteran's non-service-connected disabilities would affect his employability.

■ Although the Board's discussion may not be fully responsive to the Court's

remand direction on this question, the Court holds, for the following reasons, that any such shortcomings in the Board's response do not rise to the level of error which would be prejudicial to the appellant. *See* 38 U.S.C.A. § 7261(b) (West 1991) (the Court must "take due account of the rule of prejudicial error"). As the appellant states, the central inquiry in determining whether a veteran is entitled to a TDIU rating is whether that veteran's service-connected disabilities alone are of sufficient severity to produce unemployability. This point was emphasized by the Court in *Pratt v. Derwinski,* where, in discussing the requirements for a TDIU rating in a case where a veteran had both service-connected and non-service-connected disabilities, the Court stated:

> Under 38 C.F.R. § 4.16(a), a determination concerning unemployability indeed must be made on the basis of service-connected disabilities alone; "nonservice-connected disabilities ... will be disregarded." Even if, as it appears, the BVA determined that appellant's unemployability was a result of his age and nonservice-connected heart condition, its task was not finished. *The BVA still was required to decide, without regard to the nonservice-connected disabilities or his age, whether appellant's service-connected disabilities are sufficiently incapacitating as to render him unemployable.*

*Pratt v. Derwinski,* 3 Vet.App. 269, 272 (1992) (emphasis added). Although the Court has generally indicated that the BVA should "consider the relationship, if any, between appellant's service-connected and nonservice-connected disabilities" (*Pratt, supra; Fluharty v. Derwinski,* 2 Vet.App. 409, 413 (1992); *see also Hatlestad I,* 1 Vet.App. at 170), the need for discussion of the effect, if any, of non-service-connected disorders on the veteran's employability is obviated where the Board determines whether the service-connected disabilities alone would be sufficient to produce unemployability.

■ In the instant case, the Board stated in its discussion that "there is no persua-

sive evidence that his service[-]connected disabilities, principally orthopedic, in 1987, 1988 or thereafter precluded all employment within his capabilities". *Hatlestad,* BVA 91-__, at 26. The Board stated in its "FINDINGS OF FACT" that "[t]he service-connected disabilities are not of sufficient severity as to prevent the appellant from engaging in some form of substantially gainful employment consistent with his education and occupational experience", and stated as its "CONCLUSION OF LAW" that "[t]he appellant does not have service-connected disabilities which are sufficient to produce unemployability without regard to advancing age." *Id.* at 28. The Board stated as its reasons or bases for reaching this conclusion that "[w]ith the exception of the November 3, 1988, orthopedic evaluation, the outpatient treatment and hospitalization records do not document severely disabling residuals of the service-connected disorders", and that "[d]espite his assertions to the contrary, and ... we point out that we find his testimony lacking in credibility due to the many inconsistencies he has sprinkled throughout the record, there is no persuasive evidence that his service[-]connected disabilities, principally orthopedic, in 1987, 1988[,] or thereafter precluded all employment within his capabilities." *Id.* at 25–26. The Court does not find these reasons inadequate or the conclusion lacking "a plausible basis in the record" so as to render it clearly erroneous under 38 U.S.C.A. § 7261(a)(4) and *Gilbert,* 1 Vet.App. at 52–53. Accordingly and because the Board applied the proper standard for adjudicating the veteran's TDIU rating in concluding that his service-connected disabilities did not produce unemployability, remand for strict compliance with the Court's July 8, 1992, remand direction for a discussion of the current effect of the veteran's non-service-connected disabilities upon his employability would be pointless. *See Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992) (Court denied VA motion to remand for statement of reasons or bases where the claim was not well grounded); *Mason v. Derwinski,* 2 Vet.App. 526, 528 (1992) (Court denied VA motion to remand for

statement of reasons or bases when BVA readjudication could not change the outcome).

## C.

■ The appellant asserts that he was denied his rights under the due process clause of the Fifth Amendment of the United States Constitution by the Board's action in relying on two medical treatises as evidence against his claim without giving him notice of the intent to rely on such treatise evidence and an opportunity to respond to it. In discussing the veteran's complaints of disabling pain due to his service-connected lumbar arthritis, the Board stated:

> [The veteran] testified that the traumatic arthritis of his lumbar spine is manifested by pain which, in addition to radiating down his leg, also radiates *up* to the cervical spine and shoulders.... We note that no disability of the cervical spine has been clinically demonstrated.... [T]he preliminary objective test of the weight to be accorded subjective complaints or testimony concerning pain is consistency with elementary anatomical facts. With disease of the lumbar spine, pain, if it is more than localized, will radiate to the buttocks and to some part of the lower extremity. (R. Adams & M. Victor, *Principles of Neurology* 137 (2d ed. 1981).)
>
> There is no plausible medical basis for the assertion that the appellant suffers from low back pain which (even assuming that it results from the service-connected arthritis of the lumbar spine) radiates *up* his spine to the cervical area. Thus, his testimony on this point is not credible, and his lack of credibility on this point strikes a profound blow to the heart of his claim.

*Hatlestad*, BVA 91-___, at 18–19 (underlining in original).

Additionally, in determining that the termination of the veteran's part-time employment in 1988 was due to non-service-connected disabilities, the Board stated:

> His former employer indicated that the reason for termination of employment was due to an inability to work which was apparent, and that the appellant tried, but could not work due to dizziness, nausea, and trouble with both legs. We would point out that dizziness or vertigo is the principle symptom of Meniere's disease which has been identified as one of the appellant's nonservice-connected disabilities. (M. Krupp & M. Chatton, *Current Medical Diagnosis and Treatment* 102 (1979)).

*Hatlestad*, BVA 91-___, at 21–22 (underlining in original).

In *Thurber v. Derwinski*, 5 Vet.App. 119, 126 (1993), this Court held:

> [B]efore the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent [Statement of the Case or Supplemental Statement of the Case] with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it. If, in the course of developing or obtaining or attempting to so develop or obtain such evidence, the BVA becomes aware of any evidence favorable to the claimant, it shall provide the claimant with reasonable notice of and a reasonable opportunity to respond to the favorable evidence, and shall in its decision provide reasons or bases for its findings with respect to that evidence.

In the instant case, in which the BVA decision was issued prior to this Court's decision in *Thurber*, it appears that the Board did not provide the veteran with notice of its intent to rely upon medical treatises and an opportunity to respond to those treatises. Therefore, remand is required for the Board to comply with the *Thurber* requirements. *See Santiago v. Brown*, 5 Vet. App. 288, 293 (1993) (remanding matter to BVA for compliance with *Thurber* where BVA decision on appeal had been issued prior to *Thurber*); *Houston v. Brown*, 5 Vet.App. 245, 247 (1993) (noting that BVA

decision was issued prior to *Thurber* and remanding for compliance with *Thurber* ).

Additionally, in *Hatlestad II*, the Court concluded:

> The Board should henceforth include in its decisions quotations from medical treatises (rather than bare citations), and such quotations should be of sufficient length so that their context (both within the treatise in question and within the body of relevant medical literature) is able to be determined. Under this procedure, the Board would be free to draw guidance from a great diversity of recognized medical treatises, rather than, for example, only those that may be readily available to this Court.

3 Vet.App. at 217. Although the Court did not then explicitly remand the matter for compliance with the rule first announced in *Hatlestad II*, the Board will be required to apply that rule in the readjudication ordered pursuant to this opinion.

### D.

█ Finally, the appellant contends that the Board "completely ignored" and "does not even mention" the reports of two VA examinations which, he asserts, support his claim of severe disability due to pain from his service-connected disabilities. Br. at 24–25. The Board is required to base its decisions on consideration of "all evidence and material of record" (38 . U.S.C.A. § 7104(a) (West 1991); 38 C.F.R. § 3.303(a) (1992)), and to provide an adequate statement of reasons or bases explaining its findings as to the credibility and probative value of the evidence of record and its reasons for rejecting any evidence favorable to the claimant (38 U.S.C.A. § 7104(d)(1); *Gilbert,* 1 Vet.App. at 57, 59).

█ Here, the evidence of record includes a report of a November 3, 1988, VA orthopedic examination (R. at 35–36) in which the examining physician noted the veteran's complaints of pain in his back and knees, and stated:

> If he flexes 10 degrees he has pain, rotation to the right 10 degrees he has pain. Very limited low back motion because of pain and muscle spasm. Rotation to the

right and to the left is very limited. One just merely has to look at the x-rays to know this man has difficulty with his low back. . . . Also, in reference to the left knee he has a painful range of motion.

R. at 36. Furthermore, in the report of a February 6, 1989, VA orthopedic examination (R. at 40–43), the examiner noted that the veteran had tenderness and some limitation of motion in the left knee and "back pain, extensively degenerative lumbar spine". R. at 43. That report also noted, in recounting the veteran's history, that "he has had significant back troubles with pain and inability to work." R. at 42.

The appellant contends that the Board failed to discuss those two examinations and their findings regarding his pain. Although the Board did explicitly *mention* both examinations in its decision, it is unclear whether the Board determined that the findings noted on those examinations constituted credible evidence of disabling pain affecting the veteran's employability and, if so, how much probative value the Board found that evidence to have. In its discussion, the Board noted that "[a]t a November 1988 orthopedic evaluation, the appellant reported that pain in his back radiated down his left leg." *Hatlestad,* BVA 91-__, at 18. Later in its decision, the Board stated: "With the exception of the November 3, 1988, orthopedic evaluation, the outpatient treatment and hospitalization records do not document severely disabling residuals of the service-connected disorders." *Id.* at 25. With regard to the February 1989 VA examination, the Board stated:

> [W]e note that the report of the February 1989 official examination includes the appellant's complaints, objective clinical findings pertaining primarily to the low back and knees[,] and diagnoses. To the extent that information is provided regarding the service-connected disabilities, we deem it highly reliable concerning the level of impairment which is present.

*Ibid.* The Board's decision contains no other express *discussion* of those VA examination reports.

In its discussion of the veteran's claims of disabling pain from his service-connected disabilities, the Board stated:

> Pain is recognized as an important factor of disability in any form of arthritis (38 C.F.R. § 4.59).... The provisions of 38 C.F.R. 4.40, however, require that functional loss due to pain be supported by adequate pathology and be evidenced by the visible behavior of the claimant undertaking the motion. Section 4.59 also recognizes "painful motion with joint or periarticular pathology as productive of disability." Code 5003 of the Schedule for Rating Disabilities indicates that limitations of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Thus, while pain is subjective, there is a schedular requirement of objective findings to support assertions of pain.

> In the present case, outpatient treatment notes dated in apparently September 1988, at least 1 to 2 years after the appellant alleges he was rendered unemployable due to service-connected disability, reveal that he reported he felt quite good and was able to break up a sidewalk with a sledgehammer and remove (the debris) [sic] with a trailer-tractor. Obviously, an individual disabled with orthopedic disabilities which he alleges cause severe pain and an inability to work at even mildly to moderately strenuous work, *could not* undertake the significant exertion required with this type of physical labor.... While we do not doubt that pain is a manifestation of the service-connected orthopedic disabilities and that it must be considered, we cannot say that the credible evidence is consistent with the existence of pain which is so unremitting that it prevents him from working.

*Hatlestad*, BVA 91-__, at 23–24 (underlining in original). From this discussion, it is unclear whether the Board viewed the VA examiners' findings to be credible objective evidence of disabling pain as is required by 38 C.F.R. §§ 4.40 and 4.71a, diagnostic code 5003 (1992), and, if so, whether it concluded that the level of disabling pain evidenced on those reports was insufficient, in conjunction with the other service-connected disabilities, to produce unemployability, or simply concluded that the credible evidence of disabling pain was outweighed by other credible evidence of record. As part of the remand ordered pursuant to part II.C., *supra*, the Board should clarify this matter.

### III. Conclusion

For the reasons set forth in parts II.C. and II.D., above, the June 7, 1991, BVA decision is vacated and the matter remanded for prompt readjudication and issuance of a new decision in accordance with this opinion. *See* 38 U.S.C.A. § 7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). "On remand, the veteran will be free to submit additional evidence and argument" in connection with the remanded issues. *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992).

VACATED AND REMANDED.