Citation Nr: 1602955 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 07-28 368 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUES

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

N. Sangster, Associate Counsel

INTRODUCTION

The Veteran served on active duty from March 1965 to March 1975.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas, which, in part, continued the 50 percent disability evaluation for PTSD.

In December 2008, the Veteran and his wife testified before the undersigned Acting Veterans Law Judge at a Travel Board hearing at the RO. A copy of the transcript has been associated with the claims file. The appeal was then remanded in May 2011 for additional development. Thereafter, in September 2013, the Board denied a rating higher than 50 percent prior to October 19, 2010, for PTSD but granted a 70 percent rating since October 19, 2010. The Board also remanded the Veteran's claim for a TDIU for further development.

The issue of entitlement to a TDIU prior to October 19, 2010 is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

In resolving all doubt in the Veteran's favor, his service-connected disabilities have rendered him unemployable since October 19, 2010.


CONCLUSION OF LAW

The criteria for a TDIU have been met since October 19, 2010. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.16 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

When any impairment of mind or body sufficiently renders it impossible for the average person to follow a substantially gainful occupation, that impairment will be found to be causing total disability. 38 C.F.R. § 3.340 (2015). If the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age. 38 C.F.R. § 3.341 (2015). In evaluating total disability, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effects of combinations of disability. 38 C.F.R. § 4.15 (2015). 

If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability, provided that the Veteran has one service-connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. The existence or degree of nonservice-connected disabilities will be disregarded if the above-stated percentage requirements are met and the evaluator determines that the Veteran's service-connected disabilities render him incapable of substantial gainful employment. 38 C.F.R. § 4.16(a).

If the Veteran does not satisfy the threshold minimum rating requirements, he may still receive a TDIU on an alternative extra-schedular basis under the special provisions of 38 C.F.R. § 4.16(b) , provided, however, it is shown that he is indeed unemployable on account of his service-connected disability or disabilities.
The central inquiry is, "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). 
The Veteran is service connected for posttraumatic stress disorder (PTSD), rated as 50 percent disabling prior to October 19, 2010, and as 70 percent disabling thereafter; a right leg condition (residuals of a gunshot wound), rated as 10 percent disabling since April 26, 1988; a right knee condition, rated as 10 percent disabling since April 23, 2007; tinnitus, rated as 10 percent disabling since September 9, 2014; and a left hearing loss disability, rated as 10 percent since September 9, 2014. His combined disability rating was 60 percent effective May 26, 2000 and 80 percent effective October 19, 2010. He has met the schedular requirements for a TDIU, under section 4.16(a), since October 19, 2010. 

The Board finds the Veteran is entitled to a TDIU as of October 19, 2010. The Veteran's medical records show, in October 2010, the Veteran presented with depressed mood, lack of interest, decreased sleep, and lack of energy. He also had nightmares and intrusive thoughts. He had passive thoughts of death. Examination revealed a dysphoric mood and mildly dysphoric affect. There were no hallucinations, paranoid or grandiose thoughts, or suicidal or homicidal ideation.

Additional records from December 2010 show the Veteran reported decreased frequency of nightmares, but had struck out at his wife while sleeping, which had not occurred previously. He denied any suicidal ideation. On examination, the Veteran was appropriately dressed and groomed. Speech was clear and coherent, but somewhat loud. Mood was nondepressed and affect was full. There were no perceptual disturbances. Thought processes were linear and goal directed. No delusions, hallucination, or suicidal or homicidal ideation was noted. The Veteran's GAF score was 55. Additional records dated May 2011 also revealed a GAF score of 55.

A VA examination was conducted in July 2011. He reported having a disorderly conduct charge in 2008 arising from an incident with a man in his church and a police officer. He denied any current charges or probation. He denied harming his wife since 2006, but reported pulling a knife on her and their sons in 2010. The Veteran used to go fishing but now spent most of his time watching television. The examiner noted that the Veteran had significant anger and judgment problems that exacerbated his general level of assaultiveness. On examination, the Veteran was appropriately groomed and dressed. His speech and psychomotor activity were unremarkable. His mood was agitated and irritable, and his affect was full. He was fully oriented, and able to complete serial 7's and spell a word forward and backward. His thought processes were unremarkable, but thought content was noted to be angry and aggressive. There were no delusions present. There was no obsessive or ritualistic behavior. The Veteran reported some suicidal ideation but denied any intent. Memory was fully intact. His GAF score was 48. She noted that the Veteran's typical line of work was a concrete finisher. She observed that the Veteran's last supervisor wrote "do not rehire" on the Veteran's evaluation/separation papers. The Veteran and his wife reported that this was due to almost daily conflicts with other employees. The examiner opined that it was just as likely as not that the Veteran was unemployable at this time. She stated that the Veteran's difficulty working was not due exclusively to his PTSD, but also his physical health decline and argumentative, aggressive style with others. The examiner concluded that the Veteran did not have total occupational or social impairment due to PTSD, but there were deficiencies in judgment, thinking, mood, and family relations. 

As noted above, the Board remanded this issue for further development - namely, another VA examination to determine the effect of all of his service-connected disabilities on his employability. To this end, the Veteran was provided VA examinations in May and June 2014. 

At his May 2014 VA psychiatric examination, the examiner stated that the Veteran continued to meet the full criteria for a diagnosis of PTSD as well as cocaine dependence in remission and alcohol abuse in remission, both secondary to his PTSD. She also stated that the Veteran had depression secondary to PTSD and exhibited adult antisocial thinking and behavior exacerbated by his PTSD that he continues to deny prior to his military service beginning 1965. The examiner observed that since the last July 2011 VA examination, the Veteran's anger/irritability, isolation to avoid conflicts, and capacity to concentrate and remember have increased so that he was no longer driving as much and no longer handled any financial affairs. Although there had been no legal charges, the police were called to his house by the family for his agitated outbursts. He reported little to no tolerance for anyone making mistakes. The examiner observed that the Veteran appeared to have had criminal/antisocial thinking patterns, exacerbated by his drug use history, for a long time and he had not altogether yet become abstinent. Since the July 2011 VA examination, the examiner stated that the Veteran seemed to have declined in the areas of social and leisure functioning. She commented that it appeared that the Veteran's physical health had declined as evidenced by several medical hospitalizations. Based on the chronicity of his PTSD, which was exacerbated by declining physical health, the examiner opined that the Veteran would be unemployable. She noted that the Veteran's typical line of work was as a concrete finisher and he was placed on a "no hire list" by his last employer, which was reportedly due to almost daily conflicts with the other employees. The examiner stated that it was as least as likely as not that the Veteran was unemployable at this time as he was determined to be at his last July 2011 VA PTSD examination. She further opined that it was as least as likely as not that the PTSD symptoms, which have worsened over time, render the Veteran unemployable.

Regarding his right knee disorder, the Veteran also had a VA examination in May 2014. The Veteran reported complaints of increasing weakness of the right knee; numbness and tingling of the right leg. The examiner observed that the Veteran had intermittent numbness in his foot. He stated that exacerbated with driving, it may affect the Veteran's ability to work in the trucking industry.

At the June 2014 VA examination regarding the Veteran's right leg condition, the examiner observed that the Veteran was ambulatory without cane or any other assistive device. He had normal motor strength in the right leg and foot and had a very small area of reported decreased sensation to light touch on the extreme lateral aspect of the right midfoot only (otherwise, sensation to light touch was intact on right lower extremity at knee and below as well as remainder of right foot at this time). The examiner concluded that the Veteran had no current evidence of major functional limitations in his right leg associated with the former gunshot wound of the right lower extremity in 1965.

Resolving all doubt in the Veteran's favor, a TDIU rating as of October 19, 2010, is warranted. Both the July 2011 and May 2014 VA mental health examiners opined that the Veteran's PTSD symptoms rendered him unemployable. In addition, the evidence of record shows that the Veteran is unable to obtain and maintain employment because he has been placed on a "no hire list" due to his PTSD symptoms. Moreover, his complaint of numbness and tingling in his right lower extremity hinders him from driving. The Board also notes that a February 2015 rating decision rendered the Veteran incompetent to handle disbursement of funds. Accordingly, the Board concludes that a TDIU is warranted effective October 19, 2010.


ORDER


A TDIU is granted as of October 19, 2010, subject to the statutes and regulations governing the payment of VA compensation.


REMAND

The Board must remand the issue of entitlement to a TDIU prior to October 19, 2010 for additional development.

As noted above, if the Veteran does not satisfy the threshold minimum rating requirements, he may still receive a TDIU on an alternative extra-schedular basis under the special provisions of 38 C.F.R. § 4.16(b) , provided, however, it is shown that he is indeed unemployable on account of his service-connected disability or disabilities. That said, in this alternative circumstance the Board would be precluded from granting a TDIU on this special extra-schedular basis in the first instance, having instead to refer the matter to the VA Under Secretary for Health or the Director of the Compensation and Pension Service for this special consideration. See Barringer v. Peake, 22 Vet. App. 242 (2008).

Accordingly, the case is REMANDED for the following action:

1. Please refer this claim for a TDIU prior to October 19, 2010, to the Director, Compensation and Pension Service for extra-schedular consideration, to determine whether the Veteran is unemployable by reason of service-connected disabilities. 
 
 2. If any benefit sought on appeal remains denied, a supplemental statement of the case should be furnished to the Veteran and his representative, and they should be afforded a reasonable opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
KELLI A. KORDICH
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs