Citation Nr: 1719238 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 06-34 081 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to a total disability rating based on individual unemployability (TDIU).

2. Entitlement to service connection for degenerative joint disease, left hip, as secondary to the service-connected disability of Osgood-Schlatter's disease and instability, left knee.

3. Entitlement to service connection for degenerative joint disease, right hip, as secondary to the service-connected disability of Osgood-Schlatter's disease and instability, right knee.


REPRESENTATION

Appellant represented by: Richard A. Rhea, Attorney at Law



WITNESS AT HEARING ON APPEAL

The Veteran and his spouse.


ATTORNEY FOR THE BOARD

Roya Bahrami, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1967 to August 1968.

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Offices (ROs) in Columbia, South Carolina and Montgomery, Alabama.

In February 2011, the Veteran testified before the undersigned at a Travel Board hearing; a transcript of that hearing is of record. 

The matter of entitlement to a TDIU has been previously remanded by the Board for further evidentiary development in September 2015.

In August 2015, the Veteran again testified at a Travel Board hearing regarding the issues of entitlement to service connection for left and right hip disabilities. However, VA was unable to produce a written transcript of the proceeding due to numerous inaudible information in the audio recording of the hearing. The Veteran was informed of this fact in letters dated October 2015 and January 2016, and notified that he had the opportunity to testify at another hearing. He was told to respond to this notice within 30 days if he desired another hearing. Otherwise, the Board would assume that the Veteran did not desire another hearing and it would proceed with his claims. To date, the Board has received no notification from the Veteran requesting a new hearing, and as such, it is assumed that he does not desire a new hearing.

The issues of entitlement to service connection for left and right hip disabilities are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The evidence is at least evenly balanced as to whether the Veteran's service-connected disabilities preclude gainful employment for which his education and occupational experience would otherwise qualify him.


CONCLUSION OF LAW

With reasonable doubt resolved in favor of the Veteran, the criteria for assignment of a TDIU have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 4.16(b) (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340 (2016). If the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age. 38 C.F.R. § 3.341(a) (2016). In evaluating total disability, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effects of combinations of disability. 38 C.F.R. § 4.15 (2016).

If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability, provided that the Veteran has one service-connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. The existence or degree of non-service connected disabilities will be disregarded if the above-stated percentage requirements are met and the evaluator determines that the Veteran's service-connected disabilities render him incapable of substantial gainful employment. 38 C.F.R. § 4.16(a) (2016). All Veterans who are shown to be unable to secure and follow a substantially gainful occupation by reason of service-connected disability shall be rated totally disabled. 38 C.F.R. § 4.16(b) (2016). In cases where the schedular criteria are not met, an extraschedular rating is for consideration. 38 C.F.R. § 3.321 (2016).

The central inquiry is "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

For a veteran to prevail on a TDIU claim, it is necessary that the record reflect some factor which takes his or her case outside the norm of other such veterans. 38 C.F.R. §§ 4.1, 4.15 (2016). The sole fact that the Veteran is unemployed or has difficulty obtaining employment is not enough. The assignment of a rating evaluation is itself recognition of industrial impairment. Therefore, the question now presented is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. Van Hoose, 4 Vet. App. at 363. 

The ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one; that determination is for the adjudicator. See 38 C.F.R. § 4.16 (a) (2106); see also Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013) (noting that "applicable regulations place responsibility for the ultimate TDIU determination on the [adjudicator], not a medical examiner"). When the claim is in equipoise, the reasonable doubt rule is for application. See 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2016).

The Veteran's current service-connected disabilities include the following: depressive disorder, rated as 50 percent disabling; Osgood-Schlatter's disease, left knee, rated as 10 percent disabling; Osgood-Schlatter's disease, right knee, rated as 10 percent disabling, lateral instability, left knee, rated as 10 percent disabling; and lateral instability, right knee, rated as 10 percent disabling. His combined disability rating is 70 percent.

Reviewing the evidence regarding his employability, the Veteran reports that he was last employed full-time in August 2000. His occupation was a welder. See, e.g, November 2015 VA Form 21-8940. He had worked as a welder for Gulf State Steel since service and until the plant closed. During service, his major duties were related to the security police field. He has a 12th grade education. See, e.g., February 2001 VA Form 28-1902B. The Veteran claims that he is unable to work due to his knees. See, e.g., February 2011 Board Hearing Transcript, p. 27.

The record contains a February 2001 VA Vocational Rehabilitation certificate of entitlement and counseling narrative. At that time, the examining rehabilitation counselor found that the service-connected knee disability restricted the Veteran in performing the following activities: lifting, carrying, pushing, pulling, balancing, stooping, kneeling, crouching, crawling, and walking. The Veteran's knees, coupled with the Veteran's other orthopedic and heart problems, also limited the Veteran from working in outside, extreme cold, sudden temperature change, humid environment, high places, around moving objects, and around hazardous machinery.

On June 2016 VA knee examination, the examiner found that the Veteran could only do sedentary work. On June 2016 VA mental health examination, the examiner found occupational and social impairment with reduced reliability and productivity. If Veteran were employed in either physical or sedentary work, he may have the following occupational difficulties due to depressive symptoms: occasional problems interacting effectively with supervisors, co-workers, and customers due to irritability/anger and strong tendencies to isolate; frequent sleep disturbance resulting in frequent daytime fatigue, difficulty in getting to work on time and maintaining mental stamina; and generalized anxiety and attention and concentration problems stemming from depression could contribute to errors and reduced efficiency of job performance.

In sum, the medical and lay evidence of record suggests that the Veteran's service-connected disabilities, especially in combination, are of a nature and severity as to preclude him from engaging in work. The record shows that he is currently unemployed. The record also shows that several of his service-connected disabilities play a major role in his inability to obtain and maintain employment, in that they affect both his physical and mental ability to perform work on a consistent or continual basis, in either a sedentary or physical setting.

The Board notes the record does not contain an opinion as to the combined effect of the Veteran's disabilities on his ability to obtain sedentary employment. Such an opinion is not required, however. Floore v. Shinseki, 26 Vet. App. 376, 381 (2013). Rather, the "applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner." Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). Moreover, whether a veteran could perform the physical and mental acts required by employment at a given time is an issue about which a lay person may provide competent evidence. Id. at 1354 ("neither the statute nor the relevant regulations require the combined effect [of disabilities] to be assessed by a medical expert"). The above reflects that the evidence is at least evenly balanced as to whether the functional impairment caused by the Veteran's service connected disability precludes the Veteran from securing and following substantially gainful employment. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to a TDIU is warranted.

As a final matter, given the grant of the full benefit sought on appeal, discussion of whether that VA has satisfied the duties to notify and assist, as required by the Veterans Claims Assistance Act of 2000. See 38 U.S.C.A. §§ 5103, 5103A (West 2014 & Supp. 2015); 38 C.F.R. § 3.159 (2016), is unnecessary.


ORDER

Entitlement to a TDIU is granted, subject to regulations governing the payment of monetary awards.


REMAND

Regarding the claimed left and right hip disabilities, the Veteran asserts that they are secondary to his service-connected knee disabilities. As noted above, the Veteran is service-connected for Osgood-Schlatter's disease and instability of the left and right knees.

On May 2014 VA hip and thigh examination, the examining physician's assistant opined that the currently diagnosed bilateral hip disorders were not caused by or the result of service-connected Osgood-Schlatter's disease of both knees. The examiner reasoned that "there is no known connection between hip degenerative joint disease and Osgood Schlatter disease as causative. The knee disorder is self-limited and will not cause chronic ongoing knee problems and cannot therefore be the cause of any hip disorder."

The Board finds this opinion to be inadequate. First, the record indicates that the Veteran's Osgood-Schlatter's disease does indeed cause chronic ongoing knee problems, as described in more detail above. Second, the Board notes that, in September 2015, the Board granted service connection for instability of the left and right knee; as such, an opinion which discusses whether the Veteran's bilateral knee instability has caused or aggravated his bilateral hip degenerative joint disease is warranted. In this regard, the Board points to a February 2009 private treatment record which noted complaints of bad left leg pain. On examination, the Veteran had pain on internal and external rotation, which appeared to be primary to the hip. However, on a secondary examination he had evidence of an L4 nerve root irritation with a diminished knee jerk, a positive femoral stretch, and a positive sciatic stretch both. He also had trochanteric bursitis which was probably from mispositioning his walking. His left knee continued to collapse into further varus and now he has about a 10 degree varus posture at rest. As this treatment record suggests a relationship between the Veteran's service-connected knee disabilities and one or both of his hips, the Board finds that a remand to obtain an opinion from an appropriate specialist physician is warranted.

Accordingly, the claims remaining on appeal are REMANDED for the following action:

1. Request an opinion from an appropriate specialist physician. The claims folder, including a copy of this Remand and any pertinent documents in the Virtual VA file, must be made available to and reviewed by the examiner. All appropriate tests and studies must be accomplished, and all clinical findings must be reported in detail.

Following review of the claims file, the physician should express an opinion as to whether it is at least as likely as not, i.e., a 50 percent or greater probability, that the Veteran's left and right hip disabilities were either (1) caused or (2) aggravated beyond the normal course of the condition by a service-connected knee disabilities (including Osgood-Schlatter's disease and instability)?

All opinions expressed must be supported by a medical rationale.

2. Then, readjudicate the claims on appeal. If any benefit sought remains denied, issue a supplemental statement of the case and provide the Veteran and his representative the requisite period of time to respond. The case should then be returned to the Board for further appellate review, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs