﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/19 Archive Date: 12/31/19

DOCKET NO. 190508-8774
DATE: December 31, 2019

ORDER

Entitlement to a total disability based upon individual unemployability (TDIU) is granted.

Service connection for vertigo in excess of an initial 10 percent rating evaluation is denied.

FINDINGS OF FACT

1. The evidence of record demonstrates that the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

2. The Veteran’s vertigo is manifested one to four times a month, lasting from one to twenty-four hours. Evidence of occasional staggering has not been shown. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to a total disability rating based on individual unemployability due to a service-connected disabilities (TDIU) have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16.

2. The criteria for an initial rating in excess of 10 percent for vertigo have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, Diagnostic Code 6204. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from September 1970 to May 1975.

In April 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). The rating decision on appeal was issued on March 14, 2019. 

The Veteran elected the Higher-Level Review lane when submitting the RAMP election form in April 2018. Accordingly, the March 14, 2019, rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested a Direct review of the evidence considered by the RO.

These matters were previously before the Board in May 2016, at which time they were both remanded for further development. 

1. TDIU

The Veteran contends that his service-connected disabilities have prevented him from securing or maintaining substantially gainful employment. 

Total disability ratings are authorized for any disability or combination of disabilities for which the Schedule for Rating Disabilities prescribes a 100 percent disability evaluation, or, with less disability, if certain criteria are met. Id. Where the schedular rating is less than total, a total disability rating for compensation purposes may be assigned when the disabled person is considered to be unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

In reaching such a determination, the central inquiry is “whether the veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). In the process of determining whether unemployability exists for TDIU, consideration may be given to the veteran’s level of education, special training, and previous work experience, but not to his age or to any impairment caused by any nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19. 

In order for a veteran to prevail on a claim for a TDIU, the record must reflect some factor that takes his case outside of the norm. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether the veteran can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

The Veteran’s service-connected disabilities include: (i) an acquired psychiatric disorder, diagnosed as anxiety and depression, and post-traumatic stress disorder associated with tinnitus (50 percent); (ii) obstructive sleep apnea, claimed as sleep disorder associated with an acquired psychiatric disorder, diagnosed as anxiety and depression, and posttraumatic stress disorder (50 percent); (iii) tinnitus (10 percent); (iv) vertigo associated with tinnitus (10 percent); and (v) bilateral hearing loss (0 percent). 

The Veteran’s combined schedular disability was 80 percent from July 13, 2010. Therefore, the Veteran meets the schedular criteria for a TDIU claim. 38 C.F.R. § 4.16.

Specifically, the Veteran reports that his mood/anxiety disorder, depression, PTSD, sleep apnea, and vertigo, which has caused him to fall down on a few occasions, makes him unable to function in any working environment. He further asserts that his tinnitus symptoms are constant, which in turn adversely affects his mood and personality, and consequently makes him unproductive, as he is unable to effectively perform daily work-related tasks. See, October 2010 VA Form 21-4138 - Statement in Support of Claim. See, July 2012 VA Form 21-4138 - Statement in Support of Claim. 

On his VA Form 21-8940, Application for Increased Compensation Based on Unemployability, dated January 2015, the Veteran indicated that he last worked as a Housekeeping Aide from February 2013 to December 2013. In another VA Form 21-8940, dated April 2012, the Veteran noted that he also previously worked as an Inventory Worker from April 2009 to October 2010. The Veteran reports that his employment experience and training is primarily as a Warehouse/Inventory worker which entailed stocking supplies, checking inventories, and operating forklifts. See, July 2012 VA Form 4138 - Statement in Support of Claim.

During the Veteran’s March 2017 Compensation and Pension (C & P) PTSD examination, the Veteran stated that when he was working, he got very stressed at work and he struggled to get along with people because of his mood/anxiety/PTSD disorder, and consequently he got into several arguments with his co-workers and his supervisors. The Veteran also stated that this was the reason he only worked briefly at the VA hospital in 2013, the last time he worked. The Veteran’s reported anxiety is supported by the record, as the functional impact of his PTSD symptoms is noted to include “difficulty in adapting to stressful circumstances, including work or a work like setting”. 

However, the examiner also referenced a December 2013 Mental Disorders C & P VA examination record where it was reported that the Veteran’s depressive disorder’s functional impact was manifested by occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, but that he generally functioned satisfactorily with regards to normal routine behavior, self-care and conversation.

In response to the May 2016 Board Remand directive to differentiate what portion of the indicated level of occupational and social impairment is attributable to the Veteran’s mental disorders, the March 2017 examiner stated the following: 

It is not possible to differentiate what portion of the impairment is attributable to each diagnosis because all of the veteran's chronic PTSD and depression symptoms have been chronic, progressive, biologically and behaviorally interactive, and the symptoms are concurrent and overlapping. 

With regards to a nexus opinion, the March 2017 examiner found that it is at least as likely as not (less than 50 percent probability) that the Veteran’s service-connected conditions render him unable to secure gainful employment on the basis that the examiner considered the veteran’s ability to understand and follow instructions, as well as sustained concentration to perform simple tasks, only mildly impaired.

Nonetheless, a different examiner that conducted an Ear or Peripheral Vestibular Conditions examination in March 2017 specifically noted that the functional impact of the Veteran’s vertigo is that it adversely impacts his ability to follow orders. See, March DBQ for Ear Conditions. 

In weighing the evidence, the Board finds the Veteran’s statements regarding his symptoms of PTSD, vertigo, sleep disorder and tinnitus highly probative, as they are first-hand accounts of his experience, and he has been very consistent about how his symptoms impacts his ability to maintain sustainable employment, which is also supported by some findings in March 2017 PTSD VA examination and the March 2017 VA vertigo examination. 

Thus, the evidence is at least evenly balanced as to whether the functional impairment caused by the Veteran’s service-connected disabilities have made employment unsustainable. Reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran. 38 C.F.R.§5107, 38 C.F.R. § 3.102.

Consequently, in considering the severity of the Veteran’s disabilities, his work history and experience, and the Veteran’s own statements as to his inability to maintain work due to his conditions, the Board finds that the combined effects of the manifestations of his service-connected PTSD, vertigo, tinnitus and sleep disorder are sufficiently incapacitating to result in sustained unemployability.

Therefore, resolving reasonable doubt in the Veteran’s favor, the Board finds that the evidence supports entitlement to an award of TDIU. Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013).

2. Increased Rating for Vertigo in excess of 10 percent

The Veteran is currently assigned a 10 percent disability rating for vertigo, under Diagnostic Code (DC) 6204, effective July 13, 2010, the date of his claim. 

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability ratings is the ability of the body as a whole, or of the psyche, or of a system or organ of the body, to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10. 

Under DC 6204, peripheral vestibular disorders, a 10 percent disability rating is warranted for occasional dizziness; and a maximum rating of 30 percent is warranted for dizziness and occasional staggering. 38 C.F.R. § 4.87, DC 6204. The note associated with DC 6204 states that objective findings supporting the diagnosis of vestibular disequilibrium are required before a compensable evaluation can be assigned under DC 6204.

The regulations preclude the assignment of separate ratings for the same manifestations under different diagnoses. The critical element is that none of the symptomatology for any of the conditions is duplicative of or overlapping with symptomatology of the other conditions. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259 (1995).

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability more closely approximates the criteria required for that particular rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When a reasonable doubt arises regarding the degree of disability, that reasonable doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3.

In the Veteran’s first afforded VA examination in February 2012, the examiner concluded that the cause of the Veteran's dizziness was more likely vascular than otologic, noting that the Veteran's hearing loss pattern and symptom duration were not consistent with Meniere's disease. See, February 23, 2012 VA treatment report, associated with VA treatment records, dated from December 10, 2009 to March 23, 2012, labeled as "CAPRI" and received into the Veteran's Virtual VA electronic record on April 23, 2012. 

However, because the examiner did not provide any specific reasoning for this conclusion and an opinion as to whether any otologic disability (i.e., hearing loss and tinnitus) had permanently aggravated the Veteran’s dizziness, in May 2016, the Board found this aspect of the examiner’s findings of low probative value, especially in light of the Veteran’s post-service VA treatment records. This included a February 23, 2012, record where the Veteran reported having intermittent episodes of dizziness that typically occurred when he “stood up or laid down,” lasting 30 seconds, and that they were sometimes associated with nausea. The Veteran also indicated that he felt faint during these episodes.

Consequently, the Board remanded this issue for a new VA examination. Based on the findings of the post-remand examination in March 2017, the RO granted the Veteran service connection for vertigo with an initial 10 percent rating, which the Veteran is currently appealing. 

The March 2017 VA examination reflects a diagnosis of vertigo, with the Veteran reportedly experiencing a hearing impairment with vertigo 1 to 4 times a month for 1 to 24 hours. The Veteran also reported tinnitus more than once weekly for more than 24 hours, and that this impacts his ability to work because the Veteran’s condition affects his ability to follow orders. 

The physical aspect of the examination revealed the following findings: that the Veteran did not have a benign neoplasm of the ear; he had not had any surgical treatment for an ear condition; his external ear, ear canal, tympanic membrane, and gait were all normal. The Dix Hallpike, and Limb coordination tests were respectively reported as normal, with the exception of the Romberg test with respect to which the Veteran tested abnormal or positive for unsteadiness. The Veteran also reported that he was not receiving treatment or medication for his vertigo condition. 

In addition, the Veteran’s treatment record reflects that during a neurological consultation in March 2018, the Veteran reported that his vertigo was stable, and that he was experiencing vertigo 3 times per month.

A review of the Veteran’s treatment records also reflects that the Veteran’s previous Dix Hallpike test, which was performed during a vestibular evaluation in 2014, was normal, indicating that he did not have benign paroxysmal positional (BPPV) vertigo, which is associated with more frequent bouts of vertigo.

Taking all of these facts into consideration, the Board finds that the Veteran’s current 10 percent rating for vertigo is warranted for his reported occasional dizziness, as it is consistent with the Veteran’s most recently reported incidences of vertigo occurring 3 times month (April 2018), and previously reported (March 2017) as occurring 1 to 4 times a month. 

To warrant a higher rating of 30 percent (the highest rating allowed under this diagnostic code), the evidence must show dizziness and occasional staggering. The record does not include any reports or notations of staggering. 

The Board has also considered a 30 percent rating under diagnostic code 6205. Under DC 6205, Meniere’s disease, a 30 percent disability rating is warranted for hearing impairment with vertigo less than once a month, with or without tinnitus; a 60 percent rating is appropriate for hearing impairment with attacks of vertigo and cerebellar gait occurring from one to four times a month, with or without tinnitus; and a 100 percent rating is appropriate for hearing impairment with attacks of vertigo and cerebellar gait occurring more than once weekly, with or without tinnitus. 38 C.F.R. § 4.87, DC 6205.

However, the record reflects that the Veteran has never been diagnosed with Meniere’s Disease. Therefore, the Veteran does not meet any of the percentage criteria for consideration of a higher rating for Meniere’s Disease under diagnostic 6205. 

Accordingly, the Board finds that a preponderance of the evidence is against the Veteran’s claim. Hence, entitlement to an initial rating in excess of 10 percent for vertigo is not warranted at this time, and the Veteran’s claim must be denied.

 

Michael J. Skaltsounis

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J.B. King, Associate Counsel 

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.