﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 190729-25604
DATE: June 16, 2020

ORDER

On and after June 18, 2017, entitlement to a total disability rating based on individual unemployability (TDIU) is granted.

FINDING OF FACT

On and after June 18, 2017, the Veteran's service-connected disabilities have precluded him from securing or following a substantially gainful occupation.

CONCLUSION OF LAW

On and after June 18, 2017, the criteria for entitlement to a TDIU have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.59, 3.340, 3.41, 4.1, 4.3, 4.16.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active duty service in the United States Marine Corps from November 1997 to November 2001.

This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a March 2019 rating decision.

After the March 2019 rating decision denied the Veteran's claim for a TDIU, the Veteran submitted a July 29, 2019 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement), and he requested the Evidence Submission lane without a Board hearing. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). Accordingly, the Board's current review is limited to the evidence that was of record at the time of the March 2019 rating decision, the evidence submitted by the Veteran or his representative with his July 29, 2019 notice of disagreement (NOD), and the evidence submitted by the Veteran or his representative within 90 days following the date his NOD was received.

The Board notes that evidence was added to the claims file during a period of time when new evidence was not allowed for the TDIU claim. As the Board is deciding the Veteran’s claim for a TDIU, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

1. Entitlement to a TDIU.

In order to establish entitlement to a TDIU due to service-connected disabilities, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C. § 1555; 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is "whether the veteran's service connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by non-service-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19 (2014); Van Hoose v. Brown, 4 Vet. App. 361 (1993).

The regulatory scheme for a TDIU provides both objective and subjective criteria. Hatlestad, 5 Vet. App. at 529; VAOPGCPREC 75-91 (Dec. 27, 1991), 57 Fed. Reg. 2317 (1992). The objective criteria, set forth at 38 C.F.R. § 4.16(a), provide for a TDIU when, due to a service-connected disability, a veteran is unable to secure or follow a substantially gainful occupation, and has a single disability rated 60 percent or more, or at least one disability 40 percent or more with additional disability sufficient to bring the combined evaluation to 70 percent. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). In exceptional circumstances, where the veteran does not meet the aforementioned percentage requirements, a total rating may nonetheless be assigned upon a showing that the individual is unable to obtain or retain substantially gainful employment. 38 C.F.R. § 4.16(b).

Marginal employment shall not be considered substantially gainful employment. For purposes of 38 C.F.R. § 4.16, marginal employment generally shall be deemed to exist when a Veteran's earned annual income does not exceed the amount established by the U.S. Department of Commerce as the poverty threshold for one person. 38 C.F.R. § 4.16(a). Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Id. Consideration shall be given in all claims to the nature of the employment and the reason for termination. Id.

The Veteran contends that he is prevented from securing or following a substantially gainful occupation as a result of his service-connected disabilities. See October 2018 VA Form 21-8940. The Board notes that the Veteran's TDIU claim was raised in the context of his increased rating claims. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). As the Veteran submitted an intent to file these claims on June 18, 2018, the current appeal period begins on June 18, 2017, one year prior to the date of receipt of his increased rating claims. 38 C.F.R. § 3.400(o)(2).

During this period, the Veteran has been in receipt of a 30 percent disability for asthma; a 10 percent disability rating for tinnitus; a 40 percent disability rating for lumbar strain with levoscoliosis until July 1, 2018 when it was decreased to 20 percent; a 10 percent disability rating for sciatic nerve left lower extremity radiculopathy; a 20 percent disability rating for sciatic nerve right lower extremity radiculopathy before it was decreased to 10 percent effective from March 30, 2018; two separate 10 percent disability ratings for shin splints of the right and left lower extremities; a noncompensable rating for hypertension; and a noncompensable rating for left elbow scar. His combined disability rating was 80 percent prior to July 1, 2018, and 70 percent thereafter.

Consequently, the Veteran had one disability rated as 40 percent or more with additional disability sufficient to result in a combined rating of at least 70 percent during the appeal period before the Board. Although the Veteran’s 40 percent rating for lumbar strain with levoscoliosis was decreased to 20 percent effective from July 1, 2018; the Veteran's lumbar spine disability and sciatic nerve disabilities of the right and left lower extremities arise from a common etiology and are considered a single disability for TDIU purposes. See 38 C.F.R. § 4.16(a). On and after July 1, 2018, the two separate 10 percent ratings for the sciatic nerve disabilities combined with the 20 percent rating for the lumbar spine disability to result in a single 40 percent rating. 38 C.F.R. § 4.25. Consequently, the Veteran has met the minimum percentage requirements for consideration of a TDIU under 38 C.F.R. § 4.16(a) for the entire appeal period. 

Regarding the Veteran’s educational history, the Veteran reported completing one year of college, and he denied receiving any other education or training since he became too disabled to work. See October 2018 VA Form 21-8940. The Veteran's recent work history included working fulltime for a home furnishing company from August 2012 to September 2012, and fulltime as a painter for the Marine Corps Depot from August 2014 to August 2015. See VA Form 21-8940 received in October 2016 and October 2018. From October 2017 to March 2017, the Veteran reported working for The Greer Group in plant work. He stated that his highest gross earnings per month in this position were approximately 1600.00 dollars; and he had earned approximately 7,000.00 dollars in the 12 months preceding his last date of employment. The Veteran reported that the date his disabilities affected his fulltime employment was in May 2017. In the Veteran's October 2018 VA Form 21-8940, he reported that he was dismissed from this position. He also indicated that he left this job as a result of his disability.

However, in a January 2019 VA Form 21-4192, the Veteran's former employer at the Greer Group reported that he left this employment due to relocation. The employer also stated that he was employed from October 2017 to July 14, 2018; and the Veteran worked from 8 to 10 hours a day, 40 to 60 hours a week. He had earned 6,522.05 in the 12 months preceding his last date of employment, and the date of his last payment was May 11, 2018. The employer identified the type of work performed as manufacturing, and the employer did not indicate that any concessions were made as a result of disability. However, the employer estimated that the time lost due to disability preceding the Veteran’s last date of employment was 2 months.

Prior to the beginning of the appeal period in May 2017, a private treatment record noted that the Veteran was not currently working. He drove independently, and he was independent in activities of daily living. The Veteran reported that his low back pain had progressively worsened over the past 6 months. It was more constant, and the Veteran found that pain medication and muscle relaxers made him drowsy. He also reported experiencing weakness and giving out of the bilateral lower extremities with intermittent bilateral radiating pain. The Veteran's pain was an 8 out of 10, and it could range from a 3 to a 10 out of 10 at other times. The Veteran's symptoms were aggravated by walking, lying down, sitting, standing, forward flexion, and lifting/carrying/pushing/pulling.

During the appeal period, a March 2018 VA examination related to the Veteran's left elbow scar revealed that it was linear and 4 centimeters long. It was not unstable or tender to palpation. The examiner opined that it did not impact the Veteran's ability to work.

Regarding the Veteran's lumbar spine disability, a March 2018 VA examination noted that the Veteran had functional loss in the form of limited range of motion. He also experienced flare ups that he described as pain and stiffness with prolonged walking or standing. Symptoms of the Veteran's radiculopathy of the lower extremities included mild intermittent pain, mild paresthesias and/or dysesthesias, and mild numbness in the right lower extremity. No left lower extremity symptoms were reported. The examiner stated that the disability impacted the Veteran's ability to work as he had back pain, stiffness, and limited range of motion as well as difficulty with heavy lifting, bending, prolonged walking, or climbing stairs. The examiner also addressed the Veteran's right lower extremity sciatic nerve disability, stating that there was right lower extremity tingling, numbness, and difficulty with prolonged walking. An additional VA examination related to the Veteran's lumbar spine disability was conducted in November 2018. The Veteran reported suffering from flare ups that involved sharp, shooting, and throbbing pain with an inability to stand, walk, sit, or drive for a prolonged period of time. The Veteran's radiculopathy symptoms included mild intermittent pain, paresthesias and/or dysesthesias, and numbness in the left and right lower extremities. The examiner opined that the Veteran's lumbar spine disability impacted his ability to work, noting that he was unable to stand, walk, stoop, bend, sit, or drive for a prolonged period of time.

Regarding the Veteran’s shin splints of the bilateral lower extremities, a VA examination was conducted in March 2018. In terms of functional loss, the Veteran was noted to have difficulty with running, walking, or standing for prolonged periods of time. He also had flare ups that included pain with prolonged walking. Additional factors contributing to the disability were noted to be less movement than normal, interference with sitting, and interference with standing. The examiner stated that the Veteran did not use any assistive devices. The examiner opined that the Veteran's shin splint disabilities impacted his ability to perform any type of occupational tasks, stating that he had pain, stiffness, and limited range of motion in addition to difficulty with bending, prolonged standing, walking, or climbing stairs. During a subsequent November 2018 VA examination related to this disability, the Veteran reported that his disability had worsened over time, and he had to walk with a stick to maintain his balance. He experienced flare ups that consisted of sharp, intense, and throbbing pains that left the Veteran unable to walk for a prolonged period of time. The examiner noted that the Veteran regularly used bilateral knee braces and a walking cane for support. The examiner opined that the Veteran's shin splint disabilities affected his ability to perform any type of occupational task, noting that the Veteran was unable to bend, squat, walk, or drive for a prolonged period of time. 

Regarding the Veteran’s asthma disability, the Veteran was provided with a VA examination in March 2018. The Veteran reported that his disability had become worse. He treated his asthma with daily inhalational bronchodilator therapy. The examiner indicated that the Veteran had not had any physician visits for required care of exacerbation in the past twelve months. The examiner nevertheless stated that the Veteran's asthma impacted his ability to work, highlighting that the Veteran easily became short of breath and dyspneic with exertion. In December 2018, another VA examination related to the Veteran's asthma disability stated that the Veteran reported having two asthma attacks in the past month as well as another asthma attack in December. The Veteran used a budesonide inhaler twice a day and an albuterol inhaler as needed. He reported needing to use the albuterol inhaler more often than he had in the past, approximately four times in the past month. In addition, the Veteran could experience episodes of coughing that lasted for hours or days. The Veteran also stated that he had needed to visit the emergency room a few times that year for asthma symptoms. Asthma attacks could be triggered by certain smells, the Veteran becoming overheated, or laughing. The Veteran informed the examiner that he was unable to play any sports, he did not exercise as much as he had done previously, and he had to avoid yardwork or climbing stairs. No pulmonary function test was completed as the Veteran reported that he had become very lightheaded and almost passed out during recent pulmonary function tests. The examiner stated that the Veteran’s asthma was of moderate severity and it impacted his ability to work.

Regarding the Veteran's hypertension, a March 2018 VA examination noted the Veteran's report that his disability had worsened. The Veteran treated his hypertension with lisinopril. No other information regarding the Veteran's current reported symptoms was noted. The examiner opined that the Veteran's hypertension did not impact the Veteran's ability to work. A January 2019 VA examination for hypertension noted the Veteran’s report that he was taking lisinopril on a daily basis, but his blood pressure had been elevated at recent doctor appointments, and it was sometimes elevated at home. When the Veteran's blood pressure was elevated, he experienced headaches, and his eyes became red. The Veteran reported that he monitored his stress and what he ate to reduce his risk of elevated blood pressure. Regarding the functional impact of the disability, the examiner opined that the Veteran's hypertension impacted his ability to work. The examiner noted that the Veteran reported missing work, needing to leave work, and having several emergency room visits due to elevated blood pressure.

On March 7, 2018, a VA treatment record stated that the Veteran was sent home from work due to his blood pressure being too high. He had come dizzy, lightheaded, weak, and hot that morning at lunch. The record added that he a nightly headache and was sent home twice last month for high blood pressure. He also had occasional right/left upper chest pain that felt like indigestion, low back pain, and worsening shoulder pain. On March 13, 2018, a VA treatment record stated that the Veteran complained of feeling dizzy and lightheaded after being sent home from work. The Veteran reported that he had a previous incident with similar symptoms associated with an elevated blood pressure reading at work. The Veteran stated that when he returned home, his blood pressure reading was at a normal range. The Veteran's lisinopril medication was increased as a result.

In May 2018, a VA treatment record noted the Veteran's message asking whether his employer had contacted his provider about his return to work. The employer had informed the Veteran that she would be contacting VA to obtain detailed information regarding his ability to perform his job. If she had not contacted them, the Veteran requested for a letter to be sent to his employer that addressed this matter. An undated letter from Dr. S. at the Veteran's VA Medical Center that appears to be associated with this record stated that the Veteran was currently undergoing treatment for his serious medical conditions. He would be reassessed in four weeks, and a determination to clear him to return to work could not be made until after that period of time.

In April 2018, the Veteran was provided with a right shoulder MRI due to worsening right shoulder pain with decreased range of motion. The impression included low-grade, partial articular surface tear of the anterior infraspinatus with interstitial extension and moderate tendinosis, normal rotator cuff muscle bulk; mild supraspinatus tendonitis; suspect superior glenoid labral degeneration/fraying; and mild subacromial/subdeltoid bursitis. In June 2018, the Veteran was noted to have shoulder impingement with rotator cuff insufficiency, scapula infera, and scapular dyskinesia.

In January 2019, a VA treatment record noted that the Veteran reported he had not worked since March or April. The Veteran reported that although his employer had tried to find work for him to do, he was not released to return to work. In addition, his family had moved as a result of his spouse changing jobs. The Veteran was taking care of the home, performing tasks such as laundry and cooking. However, the Veteran indicated that he found these tasks extremely taxing. In February 2019, a VA treatment record indicated that the Veteran sought treatment for right shoulder pain that began the previous year in approximately March of 2018 in conjunction with the Veteran lifting heavy parts from an assembly line at work.

As noted above, the Veteran was able to maintain fulltime employment at the Greer Group between October 2017 and July 2018. Although the Veteran’s employer indicated that the Veteran was technically employed until July 2018, she also noted that he did not receive any payment after May 11, 2018. Consequently, the Board does not find that the employment was substantially gainful after May 11, 2018. In addition, it does not appear that the employment was substantially gainful prior to May 11, 2018. The Board notes that Veteran’s cumulative earnings during this period appear to be below the relevant poverty thresholds for 2017 and 2018. The VA Form 21-4192 reflects that he was paid for a period of 205 days, and his total earnings of 6522.05 dollars for this period indicates that his daily earnings were approximately 31.81 dollars. Over a total year, this amount of daily earnings would yield approximately 11,612.43 dollars, an amount that is less than the poverty threshold for one person of 12,488.00 dollars for 2017 or 12,784.00 dollars for 2018. See United States Census Bureau, Poverty Thresholds by Size of Family and Number of Children, https://www.census.gov/data/tables/time-series/demo/income-poverty/historical-poverty-thresholds.html. As the Veteran’s only employment during the appeal period was not substantially gainful, a TDIU is potentially warranted at any point in the appeal period.

Regarding this period, the Board acknowledges that certain entries from the above evidence suggest that the Veteran stopped working at the Greer Group due to a right shoulder injury, and he did not return to work as a result of relocation rather than a service-connected disability. However, in a July 2019 statement that was submitted with the Veteran's July 2019 VA Form 10182, the Veteran's representative highlighted a June 2018 letter from the Veteran's employer at the Greer Group as evidence that Veteran had been unable to return to work before his relocation due to medical suspension related to his service-connected disabilities. Although this letter was not submitted during the relevant evidence submission period discussed above, the representative summarized its contents in the statement. The representative noted that the Veteran's employer indicated that he experienced several episodes at work related to his service-connected hypertension. On January 25, 2018, the Veteran reported to the first aid clinic at work as a result of feeling lightheaded. He barely responded to the provider at the clinic, and he was taken away by an ambulance. On February 8, 2018, the Veteran reported to the first aid clinic again due to feeling sick to his stomach with a headache. He was sent home and monitored by his spouse. On March 7, 2018, the Veteran reported to the first aid clinic with high blood pressure, and he was held at the clinic for an hour to determine if his blood pressure would decrease. His starting blood pressure was 156/107, and it was 178/90 when he left the facility. Later on March 13, 2018, the Veteran reported to the first aid clinic again with high blood pressure, specifically 171/111. He was sent to the doctor, who determined that this blood pressure was 162/108. He was escorted to VA by his spouse. The Veteran finally had a visit with the first aid clinic on the job on May 3, 2018 due to chest pain. The EMS was called, and the Veteran was sent by ambulance to Cape Fear Medical Center. The Veteran had not returned to work since that time due to needing medical documentation for him to be released.

The Board notes that the representative is competent to relay the contents of the June 2018 letter from the Veteran’s employer the Greer Group. See Layno v. Brown, 6 Vet. App. 465 (1994). The Board also finds the representative to be credible as the information appears to be consistent with the corresponding VA treatment records in March 2018, the Veteran’s reported medical history in the January 2019 VA examination for hypertension, the letter from Dr. S. associated with this period of treatment, and the information noted in the VA Form 21-4192 provided by the Veteran’s employer at the Greer Group that the Veteran had lost two months due to disability during his employment from October 2017 to July 14, 2018. 

As noted above, the record reflects that the Veteran’s asthma, lumbar spine disability, and radiculopathy and shin splints of the bilateral lower extremities also impacted his ability to perform many physical occupational tasks such as bending, lifting, walking, and standing for prolonged periods. In addition, his shin splints and lumbar spine interfered with sitting. The Veteran’s most recent work history also appears to be limited to physical employment. The Board has considered this evidence as well as the Veteran's education and work history in concluding that the Veteran would be unable to function in any type of employment as a result of symptoms from his service-connected disabilities. The Board also notes that the Veteran appears able to perform certain aspects of daily living. However, the law recognizes that a person may be too disabled to engage in employment although he or she is fairly comfortable at home or upon limited activity. See 38 C.F.R. § 4.10. In addition, a Veteran does not have to prove that he is 100 percent unemployable in order to establish an inability to secure or follow a substantially gainful occupation, as required for a TDIU award. See 38 C.F.R. § 3.340(a); Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

Although the record indicates that the Veteran attempted to maintain his fulltime employment prior to his medical suspension following the May 3, 2018 event at work, the record reflects that he also had functional limitations prior to this date as a result of his service-connected hypertension, asthma, musculoskeletal, and radiculopathy disabilities. The Board again notes that despite the fact that this employment was fulltime, it is not considered substantially gainful. Based on the most probative evidence of record, and resolving all benefit of the doubt in the Veteran's favor, the Board finds that the effects of Veteran's service-connected disabilities have rendered him unable to secure or follow a substantially gainful occupation for the entire appeal period from June 18, 2017. Thus, entitlement to a TDIU is warranted during this period. See 38 C.F.R. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

 

GAYLE STROMMEN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K.C. Spragins, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.