﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/21 Archive Date: 03/31/21

DOCKET NO. 201030-119008
DATE: March 31, 2021

ORDER

Entitlement to a rating in excess of 60 percent for coronary artery disease, based upon substitution of the appellant as claimant, is denied. 

Entitlement to total disability rating based on individual unemployability due to service-connected disabilities (TDIU), based upon substitution of the appellant as claimant, is denied.

Entitlement to special monthly compensation (SMC) on the basis of housebound status, based upon substitution of the appellant as claimant, is denied.

FINDINGS OF FACT

1. The Veteran’s coronary artery disease was characterized by more than one episode of acute congestive heart failure in a year, but not chronic congestive heart failure, or workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syndrome, or left ventricular dysfunction with an ejection fracture of less than 30 percent.

2. The effects of the Veteran’s service-connected disabilities did not render him unemployable.

3. The Veteran was not permanently housebound due to his service-connected disabilities.

CONCLUSIONS OF LAW

1. The criteria for entitlement to a rating in excess of 60 percent for coronary artery disease have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.10, 4.14, 4.104, Diagnostic Code 7005 (2020).

2. The criteria for entitlement to a TDIU have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.16(a) (2020).

3. The criteria for entitlement to SMC based on housebound status have not been met. 38 U.S.C. §§ 1114, 5107 (2012); 38 C.F.R. § 3.350 (2020).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served honorably with the United States Air Force from January 1946 to November 1948 and November 1948 to April 1966.

Unfortunately, during the pendency of the present appeal, the Veteran died in October 2020. Within a year of the Veteran’s demise, his widow filed an application in October 2020 to be substituted for her husband regarding the current appeal. Accordingly, the Veteran’s surviving spouse is now the appellant regarding the matter before the Board.

The rating decisions on appeal were issued in January 2020 and October 2020, and constitutes initial decisions; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies.

In the October 2020 VA Form 10182, Decision Review Request: Board Appeal, the appellant appealed the January 2020 denial of entitlement to a TDIU, and the October 2020 denial of entitlement to an increased rating for coronary artery disease and SMC based on housebound status. The appellant elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) January 2020 decision on the TDIU claim, and the October 2020 decision on the claims for increased rating for coronary artery disease and SMC based on housebound status. 38 C.F.R. § 20.301.

Increased Rating for Coronary Artery Disease

Disability evaluations are determined by application of the criteria set forth in the VA’s Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran’s ability to engage in ordinary activities, including employment. 38 C.F.R. § 4.10. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran’s entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

The Court has held that “staged” ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). 

The Veteran’s coronary artery disease has been evaluated under the provisions of 38 C.F.R. § 4.104, Diagnostic Code (DC) 7005. Under DC 7005, a 30 percent rating is assigned when workload of greater than 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness or syncope, or; evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram or X-ray. A 60 percent rating is assigned for more than one episode of acute congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. A 100 percent rating is assigned for chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent.

One MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104, Note (2).

In this instant case, the Veteran was initially granted service connection for coronary artery disease in a July 2015 rating decision pursuant to Diagnostic Code 7005 with an evaluation of 10 percent effective May 27, 2015. The Veteran’s initial grant of service connection for coronary artery disease was increased from 10 percent to 30 percent rating in a November 2015 Rating Decision with an effective date of May 27, 2015. The Veteran’s rating was increased again from 30 percent to 60 percent in a December 2019 rating decision effective January 8, 2019. 

The Veteran filed the instant claim for increased rating in July 2020.

Turning to the evidence, the Veteran submitted an echocardiogram report in September 2019. The report found the Veteran’s left ventricular size was normal and the Veteran had borderline low ejection fraction, moderate to severe mitral regurgitation and moderate aortic insufficiency and mild tricuspid regurgitation. The report noted an ejection fraction of 50 percent. See September 2019 Echocardiogram Report. 

The Veteran was afforded a VA examination in November 2019. The examiner found the Veteran did not have congestive heart failure at the time of the examination. The clinician did not conduct an interview based METs test because the Veteran denied experiencing symptoms attributable to a cardiac condition with any level of physical activity. See November 2019 VA examination. 

The Veteran submitted another echocardiogram report from a private physician in November 2019. The report found the Veteran’s left ventricular ejection fraction was 42 percent. Further, the examiner noted a diagnosis for unspecified heart failure. See November 2019 Echocardiogram Report. 

The Veteran was afforded another VA examination in August 2020. The examiner found the Veteran had a diagnosis for congestive heart failure, however it was not chronic. The examiner noted the Veteran’s heart condition was characterized by a workload of greater than 3 METs but not greater than 5 METs resulting in dyspnea. Further, the Veteran reported his heart condition impacted his ability to work, specifically noting his shortness of breath and dyspnea with small exertion and as a former pilot, he could not fly with a heart condition. See August 2020 VA examination. 

The Board finds that the evidence preponderates against a finding of entitlement to a rating in excess of 60 percent for coronary artery disease. To warrant a higher rating, the evidence must show chronic congestive heart failure; a workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope; or, a left ventricular ejection fraction of 30 percent or less. The medical evidence of record demonstrates that the Veteran’s heart condition was characterized by a workload of greater than 3 METs but not greater than 5 METs resulting in dyspnea. Further, the most recent echocardiogram report found the Veteran’s left ventricular ejection fraction was 42 percent. These manifestations are contemplated by the current 60 percent rating; accordingly, a rating in excess of 60 percent for coronary artery disease is not warranted.

The Board has considered the Veteran’s report that his condition had worsened. While the Veteran was competent to attest to his symptoms, the Veteran's statements were non-specific and fail to establish a greater degree of functional impairment. Neither the medical evidence nor the lay evidence of record suggests that an evaluation in excess of 60 percent is warranted.

To the extent that the Veteran reported venous insufficiency stemming from his heart condition, he was not service-connected for this disability nor did the VA examiner indicate that the disability was manifested by venous insufficiency.

Thus, based on the forgoing, the Board finds that a preponderance of the evidence is against a rating in excess of 60 percent for the Veteran’s coronary artery disease. In denying an increased rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

TDIU

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the Veteran is precluded, by reason of his service- connected disabilities, from obtaining and maintaining substantially gainful employment consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16.

Total disability ratings for compensation based on individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable; (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. Id. 

The central inquiry is, “whether the veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran’s education, special training, and previous work experience, but not to his age or to the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; see also Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

In order for a veteran to prevail in a claim for TDIU, the record must reflect circumstances, apart from non-service-connected conditions, that place him or her in a different position than other veterans who meet the basic schedular criteria. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question is whether the veteran, in light of his or her service-connected disorders, is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. See Van Hoose, 4 Vet. App. at 361.

In Geib v. Shinseki, 733 F.3d 1350 (2013), the Federal Circuit held that VA’s duty to assist did not require obtaining a single medical opinion regarding the combined impact of all service-connected disabilities. “Indeed, applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner.” Id. at 1354.

Prior to his death, the Veteran was service-connected for coronary artery disease (rated as 60 percent disabling); bilateral hearing loss (rated as 50 percent); tinnitus (rated as 10 percent); and body rash with small blisters (rated as noncompensable). His combined rating was 80 percent as of January 2019. Hence, the Veteran met the criteria for schedular TDIU rating per 38 C.F.R. § 4.16(a).

In December 2019, the AOJ requested that the Veteran submit an VA Form 21-8940, and provide information pertaining to his educational and occupational history, date of last employment, and reasons for leaving his last employment. However, the Veteran did not submit this form.

The record reflects that the Veteran worked as a pilot and a flight instructor, and as noted above, the 2020 VA heart examiner indicated that the Veteran would not be able to fly with a heart condition. Despite the examiner’s findings, a December 2019 VA treatment report indicated that the Veteran still had his pilot’s license and worked on planes and engines, though it is unclear if this was in an official employment capacity.

Regardless, the Veteran did not provide any information prior to his death as to how his disabilities rendered him unemployable. The appellant has likewise not provided any additional information or argument in support of the claim for entitlement to a TDIU.

Without further information regarding the Veteran’s occupational history and last employment, the Board is unable to conclude that the Veteran was unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

Accordingly, the Board concludes that the preponderance of the evidence is against the claim for entitlement to a TDIU. The benefit-of-the-doubt doctrine is therefore not for application, and the claim must be denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

SMC Housebound

SMC may be paid if a Veteran has a single service-connected disability rated 100 percent and either (1) has additional service-connected disability or disabilities ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems; or (2) is permanently housebound by reason of service-connected disabilities. Permanently housebound means the Veteran is substantially confined, as a direct result of service-connected disabilities, to his dwelling or the immediate premises (or, if institutionalized, to the ward or clinical areas), and it is reasonably certain that the disabilities and resultant confinement will continue throughout his lifetime. 38 U.S.C. § 1114(s); 38 C.F.R. § 3.350(i).

A July 2019 Examination for Housebound Status or Permanent Need for Regular Aid and Attendance completed by a VA physician notes diagnoses of arteriosclerotic heart disease, congestive heart failure, atrial fibrillation, and back pain. The examiner noted that the Veteran was not hospitalized. He was able to feed himself but needed assistance with meal preparation. He also needed assistance with set up for bathing. He was not legally blind and did not require nursing home care. While his daughter prepared his medications, he was able to manage benefit payment or was able to direct someone to do so.

On physical inspection, posture was hunched over with kyphosis present, and the Veteran was clean in appearance. There were no problems with the upper extremities noted. With respect to the lower extremities, he had difficulty walking. There was a wound on the left foot and he required a walker when ambulated. The examiner also noted stress-related forgetfulness and poor balance. The Veteran only left the house to go to clinic appointments and the bank as driven by his daughter. He could ambulate with assistance for 100 feet.

The Board finds that entitlement SMC based on housebound status is not warranted. He did not have a single service-connected disability rated 100 percent and additional service-connected disability or disabilities ratable at 60 percent. Further, the record does not reflect that he was permanently housebound due to his service-connected disabilities. VA treatment records dated in 2019 and 2020 do not reflect that the Veteran was housebound or institutionalized solely as a result of his service-connected disabilities. Likewise, the July 2019 examination report indicates that the Veteran was able to leave his home and also notes some impairment due to back condition, which is not service-connected.

Neither the Veteran in his lifetime, nor the appellant, have provided any additional argument as to why entitlement to SMC based on housebound status is warranted.

Accordingly, the Bord finds that the preponderance of the evidence is against the claim and entitlement to SMC based on housebound status is not warranted. 38 U.S.C. § 1114; 38 C.F.R. §§ 3.350, 3.352(a). 

 

G. E. Wilkerson

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Emily A. Kotroco

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.