Citation Nr: AXXXXXXXX
Decision Date: 07/14/21 Archive Date: 07/14/21

DOCKET NO. 201118-123447
DATE: July 14, 2021

ORDER

1. A staged increased (to 50 percent, but no higher) rating is granted for the Veteran's posttraumatic stress disorder (PTSD), effective from October 28, 2019, and subject to the regulations governing payment of monetary awards; entitlement to ratings for PTSD in excess of 30 percent prior to October 28, 2019, and/or in excess of 50 percent from that date is denied. 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is granted, subject to the regulations governing payment of monetary awards. 

FINDINGS OF FACT

1. Prior to October 28, 2019, the Veteran's PTSD disability picture was characterized by manifestations no greater than occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks; from that date, it is reasonably shown to be manifested by symptoms productive of occupational and social impairment with reduced reliability and productivity, and occupational and social impairment with deficiencies in most areas is not shown. 

2. The Veteran's service-connected disabilities (obstructive sleep apnea (OSA), rated 50 percent; PTSD, 30 percent prior to, and 50 percent from, October 28, 2019); tinnitus, 10 percent; bilateral hearing loss, 0 percent; and right forearm scar, 0 percent are rated 70 percent, combined, and are reasonably shown to be of such nature and severity as to preclude his participation in any regular substantially gainful employment consistent with his education and occupational experience. 

CONCLUSIONS OF LAW

1. The Veteran's PTSD warrants a 50 percent (but not higher) rating from October 28, 2019; ratings for PTSD in excess of 30 percent prior to October 28, 2019, and/or in excess of 50 percent from that date, are not warranted. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.126, 4.130, Code 9411. 

2. The schedular criteria for a TDIU rating are met, and a TDIU rating is warranted. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.16. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The appellant is a Veteran who served on active duty from April 1966 to February 1970. The Veteran requested a Higher-Level Review of a December 2019 rating decision. Accordingly, a subsequent November 2020 rating decision considered the evidence of record as of the date VA received the request form. He timely appealed this rating decision to the Board and requested a hearing. In February 2021, a virtual hearing was held before the undersigned; a transcript is in the record. 

1. A staged increased (to 50 percent, but no higher) rating is granted for PTSD, effective from October 28, 2019; ratings for PTSD in excess of 30 percent prior to October 28, 2019, and in excess of 50 percent from that date, are denied. 

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity caused by the given disability. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. 

The Veteran's entire history is to be considered when making disability evaluations determinations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). When the appeal is from the initial rating assigned with a grant of service connection, the severity of the disability during the entire period from the grant of service connection to the present is to be considered. "Staged" ratings may be assigned for distinct periods when different levels of impairment are shown. Fenderson v. West, 12 Vet. App. 119 (1999). 

When a question arises as to which of two ratings applies under a particular code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining, including regarding degree of disability, is to be resolved in favor of the Veteran. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. 

The Veteran's PTSD has been assigned a 30 percent rating under the General Rating Formula for Mental Disorders (General Rating Formula). A 30 percent rating is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is warranted where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 

A 100 percent rating is warranted for total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (ADLs) (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Code 9411. 

Ratings for psychiatric disability are assigned according to the manifestation of particular symptoms, but the use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). Accordingly, the evidence considered in determining the level of impairment from a psychiatric disorder under 38 C.F.R. § 4.130 is not restricted to the symptoms listed in the General Rating Formula for Mental Disorders. Instead, VA must consider all symptoms of a claimant's condition that affect occupational and social function. When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, length of remissions, and the Veteran's capacity for adjustment during periods of remission. 38 C.F.R. § 4.126(a). When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign a rating solely on the basis of social impairment. 38 C.F.R. § 4.126(b). 

A May 2019 VA treatment record notes that the Veteran was clean and casually dressed in a casual button-down shirt and shorts appropriate for the weather. His mood was euthymic with a full range of affect. He was seen for PTSD-related issues. Although not formally assessed, he appeared to be oriented in all spheres and displayed no apparent thought disorder, as evidenced by his logical and goal-directed thinking. He denied suicidal or homicidal ideation, intent, or plan. Overall, his insight and judgement were good. The provider noted that the Veteran's PTSD symptoms moderately interfered with work and social relations. He reported depressive symptoms such as sadness, lack of interest in activities, and concentration problems. 

A July 2019 VA treatment record notes that the Veteran was clean and casually dressed in a casual button-down shirt and shorts appropriate for the weather. His mood was euthymic with a full range of affect. He was seen for PTSD-related issues. Although not formally assessed, he appeared oriented in all spheres and displayed no apparent thought disorder, as evidenced by his logical and goal-directed thinking. He denied suicidal or homicidal ideation, intent, or plan. Overall, his insight and judgement were good. The Veteran related that he went to breakfast with other Veterans 3 times a week, and although he usually arrived at the restaurant first and sat with his back to the wall, on the most recent occasion, he asked to sit in the middle. He reported that he checked the door maybe twice, but it was not as bad as he thought it might be. The provider praised him for the pushing he was doing, and the Veteran reported that he was able to adjust his seating arrangement due to breathing exercises he was taught. He related that he planned to go to a friend's house over the weekend to watch a fireworks display. 

On July 2019 VA PTSD examination, PTSD was diagnosed. The Veteran reported that he was currently married to his third wife and that they had a good relationship, and that he had a good relationship with his three sons from his second marriage. He reported that he had a small circle of friends who were all veterans, and that he usually got along with other people if he interacted with them in small groups. He related that he used to fish but no longer had the desire; he played games on the computer; he retired at 56 or 57 due to an aneurysm, and neurosurgeon told him not to return to work after an aneurysm procedure. He reported that he went back to work as an insurance agent for a while but then had to stop. The Veteran related that he was fine at work as long as he had one on one interactions and his desk was where he could always watch the door. The examiner noted that in March 2019, the Veteran reported flashbacks and nightmares related to his injury in Vietnam, and frequent episodes of tearfulness and guilt. Additional symptoms included chronic sleep impairment and anxiety. On mental status examination, the Veteran was clean and neatly groomed, had no overt psychomotor agitation or retardation, and had good orientation and mood. His affect was appropriate, and his thought processes were logical and goal-directed. He denied hallucinations and his memory was good. The Veteran reported no current homicidal or suicidal ideation, plan, or intention, but he did report in approximately 2005, while recuperating from his aneurysm surgery, he felt hopeless and had a plan to kill himself. He related that he had no problems with ADLs such as feeding, grooming, walking, and bathing, etc. He reported that he was able to handle his finances, shop, drive, do housework, and do some light home maintenance. He related that he was sometimes depressed but that his mood improved when he and his wife went away together for a weekend. He reported that he avoided fireworks, felt some detachment from others, and experienced some irritability and hypervigilance, but was close to his wife, sons and two granddaughters. The examiner opined that the Veteran's PTSD disability picture was best characterized as occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress; or symptoms controlled by medication. 

In a July 2019 VA functional assessment, the provider provided opinions regarding how the Veteran might function in various work-related situations. He was likely to be unimpaired in a work environment that required frequent interactions with customers, co-workers, or supervisor because, as prior to medical retirement he worked successfully as an insurance agent for approximately 33 years. He was likely to be mildly to moderately impaired in a work environment that contained moving machinery or equipment due to problems maintaining concentration. He was likely to be unimpaired in a work environment that required driving. However, he had seizures in the past that impacted on his sense of direction, but were now controlled with medication. He was likely to be mildly to moderately impaired in a work environment that required the ability to maintain concentration and focus as normally found in most jobs when working in a solitary situation. He was likely to be mildly to moderately impaired in a work environment that required rigid adherence to a set work schedule (i.e., scheduled work hours), due to difficulty with his sleep schedule. His ability to ask simple questions or request assistance was considered unimpaired, and his ability to respond appropriately to changes in the work setting mildly impaired. His ability to make simple work-related decisions was considered unimpaired, and it was noted that he was fully capable of managing funds in his own best interest. His ability to interact with the general public in an appropriate manner was considered unimpaired, and his ability to set realistic goals and make plans independently of others was unimpaired. 

On October 2019 private psychiatric evaluation, it was noted that the Veteran was casually dressed, had good hygiene, and his mood was anxious and dysphoric. His responses were well detailed, and he did not have any difficulty recalling specific dates and times for personal historical information. The provider noted that the Veteran exhibited mild to moderate difficulty maintaining attention and concentration. Although he occasionally lost his train of thought, his thinking appeared clear, mostly focused, and goal oriented. He reported that he had received VA treatment for PTSD since early 2019. He related that he had nightmares, intrusive thoughts, and flashbacks and that his spouse suggested he seek medical treatment because his sleep difficulty was interrupting her sleep. The provider noted that the Veteran experienced a mild to moderate degree of impairment in his ADLs. He reported sleep difficulty, for which he took Trazadone, which was mildly effective, and that he received a diagnosis of sleep apnea in 2015 and used a CPAP machine. He reported difficulty communicating effectively with others, especially if he did not know them. He reported that he had a small group of friends, most of whom were Veterans, and indicated that the anxiety he experienced when forced to talk to others could make him agitated and irritated. He denied engaging in any form of physical violence or aggression. He indicated that he no longer had much desire to interact with other people or develop effective social or working relationships, lacked trust in most people, and had significant discomfort around strangers, especially in larger groups or crowds. He related that when he went to a restaurant, he liked to watch the door. He related that he used to be able to travel long distances on his own to visit his mother, but now he could only travel such distances if his wife accompanied him. The provider opined that the Veteran had marked impairment in social functioning. The Veteran reported that his chronic anxiety made it very difficult for him to maintain concentration for extended periods when around other people and that his hypervigilance made it difficult for him to maintain attention and concentration in public. He related that many of his triggers were less prominent at home, but that he still had difficulty shutting his mind down. The provider opined that the Veteran had marked impairment in the area of adaptation, and observed that the Veteran was moderately anxious, had become more withdrawn, and suffered from a variety of symptoms related to poor sleep and disruptions in his communication ability, social relationships, activities, and ability to adapt to, and manage, stress. The provider noted that he experienced a significant decrease in ability to establish and maintain effective relationships, to manage stress, and to effectively maintain his concentration and attention in order to allow him to adapt to changing circumstances in the workplace and his personal life. 

On a separate form, the provider also noted that the Veteran exhibited symptoms of depressed mood, anxiety, chronic sleep impairment, impairment of long and short term memory, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, impaired impulse control (although "with periods of violence" was crossed through), and difficulty in adapting to stressful circumstances, including work or a work-like setting. The provider opined that the Veteran was not capable of engaging in a substantial gainful occupation. 

The provider additionally noted certain activities and the degree of limitation the Veteran exhibited with respect to each. Regarding understanding and memory, the provider indicated that the Veteran was not significantly limited in his ability to remember locations and ability to remember short and simple instructions and that he was moderately limited in ability to understand and remember detailed instructions. Regarding sustained concentration and persistence, the Veteran was not significantly limited to moderately limited in areas such as the ability to carry out detailed instructions and maintain attention and concentration for extended periods, and he was moderately to markedly limited in his ability to perform activities within a schedule and maintain regular attendance and the ability to work in coordination with or proximity to others without being distracted by them. Regarding social interaction and adaptation, the Veteran was not significantly limited to moderately limited in areas such as the ability to ask simple questions, the ability to get along with coworkers or peers without distracting them, the ability to maintain socially appropriate behavior, the ability to respond appropriately to changes in the work setting, and the ability to travel in unfamiliar places or use public transportation. 

The Board notes that the findings in the December 2019 VA functional assessment are the same as those in the July 2019 VA functional assessment. However, the provider additionally noted that during the current examination, the Veteran reported that he was unable to walk very far due to pain in his leg, thereby impacting his ability to work. He also related that he did not have patience to deal with the public, he was sleepy during the daytime because of his sleep apnea, and he had difficulty concentrating. 

On December 2019 PTSD examination, PTSD was diagnosed. The Veteran reported that he had been married to his current (third) wife for five years and that she had been very supportive, and he related that he had good relationships with his 3 sons. He reported that he had 4 close friends, most of whom were veterans. The Veteran related that he used to like fishing, but that now he had lost interest in fishing and mainly watched TV and played games on the computer. He reported that he retired in 2005 after his brain aneurysm and that his PTSD symptoms had improved, but that he still had nightmares and desired to sit facing the door when he went to a restaurant. The Veteran reported that Trazadone helped him fall asleep. The examiner noted symptoms of anxiety, chronic sleep impairment, and mild memory loss. On mental status examination the Veteran was clean and appropriately dressed, exhibited no overt psychomotor agitation or retardation, was oriented in all spheres, and was pleasant, calm, and cooperative. His affect was appropriate, his speech rate and tone were good, his thought content was future oriented, and his thought processes were goal directed. He reported some memory difficulty, but it was unclear how much impact his medical disorder (aneurysm) impacted his memory. The Veteran reported no current suicidal or homicidal ideation, plan, or intent, but he did report that he had suicidal thoughts in 2005 while he was recovering from his aneurysm. He denied problems with ADLs such as feeding, grooming, bathing, and walking. He related that he did not go far when he drove, lost interest in fishing, experienced periodic forgetfulness, became impatient trying to learn new material, and helped his wife with house chores, and that his wife managed family finances. The Veteran reported that he experienced mild depression when his wife was not around, panic attacks were not common, although he had one a month or two prior, on returning from a trip, and experienced anxiety about 4 days a week. He indicated that he had sleep issues related to nightmares that occurred 5-6 times a week, and that he used a CPAP machine, which helped with his sleep apnea and snoring. The examiner opined that the Veteran's PTSD disability picture was best characterized as occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. The examiner noted that the Veteran was capable of managing his financial affairs and that he was administered The Saint Louis University Mental Status (SLUMS) exam, which is a 30-point screening questionnaire used for early detection of mild neurocognitive disorders. It assesses orientation, memory, attention, and executive functioning. His score of 23/30 was suggestive of a mild neurocognitive disorder. 

In a December 2019 private vocational expert evaluation, the provider noted that the entire claims file was made available to him but that his comments were specifically directed toward the opinion of the October 2019 private psychiatric assessment provider. He indicated that the Veteran acquired skills during his time as an insurance agent that would transfer to various light and sedentary jobs in the national economy. The provider opined that the impact of the Veteran's service-connected disabilities (essentially PTSD) rendered his participation in substantially gainful occupation infeasible. He stated that the Veteran's anxiety caused him to become easily agitated and that he no longer had much of a desire to interact with people or develop effective social or working relationships. It was noted that the Veteran had difficulty going out in public without his wife because the last time he went out with his son and without his wife, he came back an anxious mess. The provider noted the Veteran's limitations regarding adaptation and indicated that his ability to respond appropriately to changes in a work setting, have appropriate awareness of normal hazards and the ability to take appropriate precautions, and travel in unfamiliar places or use public transportation was moderately limited. He then opined that the limitations described would significantly limit the Veteran's ability to participate in work activity. It was noted that the Veteran reported that his hypervigilance made it difficult for him to maintain attention and concentration in public and that he did not have patience with stressful circumstances in his life. The provider indicated that the Veteran was moderately limited in such areas as ability to carry out very short and simple instructions, ability to maintain attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruption from psychologically based symptoms, but found that such combined limitations would not allow the Veteran to participate in a substantially gainful occupation. It was further noted that the Veteran's ability to perform activities within a schedule, maintain regular attendance, and be punctual and his ability to work in coordination with or proximity to others without being distracted by them were markedly limited and the provider opined that the totality of the limitations made substantially gainful employment infeasible. 

At the February 2021 virtual hearing, the Veteran's attorney cited to the October 2019 private psychiatric evaluation and noted that the provider indicated that the Veteran experienced occupational and social impairment with reduced reliability and productivity due to such symptoms as impairment of short and long term memory and that he had disturbances of motivation and mood and difficulty in establishing and maintaining effective work and social relationships. He also noted that the provider opined that the Veteran had occupational and social impairments with deficiencies in most areas due to impaired impulse control (i.e. unprovoked irritability) and difficulty in adapting to stressful circumstances including work or a work-like setting. The Veteran testified that he experienced such symptoms, had nightly nightmares, had not worked since 2005, took medication for mood and pain, and took Trazadone to help him sleep. He related that when he went out to eat, he sat where he could watch the door, he and his wife still went out occasionally and socialized with other couples (in which the husband was a veteran), and he did not like to be in large groups. The Veteran reported that his wife took care of the shopping and most of the finances, and that he was able to drive around his small town, but if he went to a large city, he wanted his wife to accompany him. He related that he could not concentrate on something more than a minute or two and that he did not interact well with strangers, essentially because he did not want to deal with the public. The Veteran reported that he could not engage in light physical labor due to his COPD, (which was not service-connected at the time), and that he did not know any jobs he could do because he could not concentrate. He indicated that he would not be able to deliver packages because he lacked the confidence to drive in unfamiliar areas, and could not handle a job that only involved doing one task repeatedly all day because his mind wandered too much. The Veteran's attorney referenced a December 2019 vocational assessment and noted that he would have difficulty with social interaction, concentration, and appearing for work, and that although he might be able to do a menial task for a short period of time, he would not be able to maintain that employment very long because he would miss work too often and be terminated. He cited to an October 2019 residual functional capacity assessment which indicated that the Veteran was markedly limited in bility to perform activities within a schedule, maintain regular attendance, and to be punctual with customary tolerances (essentially due to his PTSD). 

The Board finds that throughout prior to October 28, 2019, (the date of the private psychiatric examination), the Veteran's PTSD most closely approximated a disability picture consistent with occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, as contemplated by the criteria for the 30 percent rating assigned. The disability picture presented did not show or suggest occupational and social impairment with reduced reliability and productivity, which would warrant a 50 percent rating. His symptoms, including chronic sleep impairment, anxiety, hypervigilance, and depressed mood were not shown to be of a severity consistent with the types of symptoms associated with the criteria for a 50 percent rating. While the record suggests some anxiety when going out without his wife to meet with friends, depressed mood, and nightmares, the Veteran continued to maintain close relationships with his wife and children and had a small circle of friends he met weekly for lunch. The evidence of record simply does not show that his PTSD resulted in occupational and social impairment with reduced reliability and productivity prior to October 28, 2019. 

However, the Board further finds that from October 28, 2019, date of a private psychiatric evaluation, the Veteran's PTSD disability picture is best characterized as approximating occupational and social impairment with reduced reliability and productivity warranting a 50 percent rating, (but not deficiencies in most areas, so as to warrant a 70 percent rating). His symptoms included anxiety, chronic sleep impairment, increasing difficulties with social relationships, and disturbances of motivation and mood. He reported a loss of interest in fishing, which was an activity that he used to enjoy, that he no longer had much of a desire to interact with people or develop effective social relationships, and frequent nightmares. Although the December 2019 private vocational expert indicated that the Veteran had difficulty going out in public without his wife because the last time he went out with his son without his wife, he returned in an anxious mess, this is not an accurate statement of what was reported on the October 2019 private evaluation. The Veteran reported to the October 2019 provider that he used to be able to travel long distances on his own to visit his mother, but now he can only travel such distances if his wife accompanies him. He did not report that simply going out into public without his wife resulted in him returning home "an anxious mess." Additionally, the October 2019 provider noted that the Veteran had symptoms of impaired impulse control (although "with periods of violence" was lined through), and difficulty in adapting to stressful circumstances, which are symptoms of a higher, 70 percent rating. Although the Veteran has reported bouts of irritability, he was not violent, and instead, would retreat to his room to calm down. Regarding ability to adapt to stressful circumstances, the Veteran has reported increased anxiety; but as noted above, he was able to drive himself around town and go out to eat with his wife, and he has consistently maintained good family relations, and tended to activities of daily living himself. Such symptoms and impairment simply do not reflect deficiencies in most areas, and do not warrant a 70 percent rating. 

2. Entitlement to a TDIU rating is granted. 

A TDIU rating may be assigned, where the schedular rating is less than total, when a veteran is unable to maintain a substantially gainful occupation as a result of service-connected disability. 38 C.F.R. §§ 3.340, 3.341, 4.16. If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). For those veterans who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a), total disability ratings for compensation may nevertheless be assigned when it is found that the service-connected disabilities are sufficient to produce unemployability; such cases should be referred to the Director, Compensation and Pension Service, for extraschedular consideration. 38 C.F.R. § 4.16 (b). 

At the outset, it is noteworthy that disability ratings represent, as far as can practicably be determined, the average [emphasis added] impairment in earning capacity resulting from the service-connected disabilities in civil occupations. See 38 C.F.R. § 4.1. In other words, occupational impairment with respect to a specific type of employment is not dispositive; and if a Veteran is precluded by service connected disability or disabilities from participating in a specific type of employment in which the Veteran has primary experience, but remains capable of maintaining other regular substantially gainful employment consistent with education and occupational experience, such Veteran is not deemed unemployable. 

The central inquiry in a TDIU claim is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's level of education, special training, and previous work experience, but age and impairment caused by nonservice-connected disabilities are not factors for consideration. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

In a claim for TDIU, the ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one; that determination instead is for the adjudicator. See 38 C.F.R. § 4.16 (a); see also Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

The Veteran contends (as noted in his February 2019 TDIU application and lay statements) that he is unable to maintain substantially gainful employment due to his service-connected OSA and PTSD, and his non-service-connected COPD, lower leg injury, and cognitive deficit residuals of a cerebral aneurysm. He reported that he completed four years of high school and e became too disabled to work in March 2005. His service-connected disabilities (during the period on appeal) have included: OSA, rated 50 percent; PTSD, 30 percent prior to, and 50 percent from, October 28, 2019; tinnitus, 10 percent; bilateral hearing loss, 0 percent; and right forearm scar, 0 percent. The combined rating is 70 percent. Therefore, the Veteran meets the schedular rating requirements for a TDIU rating. See 38 C.F.R. § 4.16(a)(2). The remaining (and dispositive) question is whether his service-connected disabilities render him incapable of participating in a regular substantially gainful occupation consistent with his education and work experience. [The Veteran requested a hearing as part of his AMA appeal, therefore, as noted above, the Board can consider evidence that was considered in the December 2019 rating decision, the February 2021 virtual hearing testimony, and any evidence he submitted within 90 days of the hearing. The Board acknowledges that this decision increased the rating for PTSD to 50 percent and will include in its TDIU analysis consideration of the severity only of the PTSD as of the December 2019 rating decision. Further, a June 2021 rating decision implemented the Board's June 2021 decision granting service connection for cerebral aneurysm and chronic obstructive pulmonary disease (COPD), but cerebral aneurysm and COPD cannot be included in the TDIU analysis since service connection had not been granted for either disability during the period on appeal (and that disability is not for consideration .]

A May 2019 VA treatment record notes that the provider indicated that the Veteran's PTSD symptoms moderately interfered with work and social relations. He reported depressive symptoms such as sadness, lack of interest in activities, and concentration problems. 

A July 2019 VA treatment record notes that the Veteran was currently service-connected for forearm scar, hearing loss, and tinnitus. Regarding his hearing, the provider opined that the Veteran was able to understand spoken language easily and communicated answers to questions well. The provider opined that such disabilities should not preclude employment, that the Veteran could be employed in a sedentary job such as a desk clerk, and that he could not be employed around loud noise because that may cause a potential problem with his hearing disability. 

On July 2019 VA PTSD examination, the Veteran reported symptoms of chronic sleep impairment and anxiety. He related that he had no problems with ADLs such as feeding, grooming, walking, and bathing, etc., and that he was able to maintain his finances, shop, drive, do housework, and do some light home maintenance. On mental status examination, the examiner noted that the Veteran had no overt psychomotor agitation or retardation, his thought processes were logical and goal-directed, and his memory was good. The examiner opined that the Veteran's PTSD disability picture was best characterized as occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress; or symptoms controlled by medication. 

In a July 2019 VA functional assessment, it was noted that the Veteran was likely to be unimpaired in his ability to make simple work decisions, ask questions, interact with the public in an appropriate manner, and drive in a familiar area (with the help of his seizure medicine), but was likely to be mildly to moderately impaired in a work environment with moving machinery or equipment due to problems with maintaining concentration. Also, he was likely to be mildly to moderately impaired in a work environment that required ability to sustain concentration and focus as normally found in most jobs when working in a solitary situation, and he was likely to be mildly to moderately impaired in a work environment that required a rigid adherence to a set work schedule (i.e., scheduled work hours), due to difficulty with his sleep schedule. 

On October 2019 private psychiatric evaluation, it was noted that the Veteran exhibited a mild to moderate degree of difficulty maintaining his attention and concentration. Although he occasionally lost his train of thought, his thinking appeared clear, mostly focused, and goal oriented. The provider indicated that the Veteran experienced a mild to moderate degree of impairment concerning his ADLs. He reported sleep difficulty, that he took Trazadone, which was mildly effective, and that he received a diagnosis of sleep apnea in 2015, for which he used a CPAP machine. The Veteran reported difficulty communicating effectively with others, especially if he did not know them. He reported a lack of desire to interact with other people or develop effective social or working relationships, lacked trust in most people, and had significant discomfort around strangers, especially in larger groups or crowds. The provider opined that the Veteran had marked impairment in the area of social functioning. He reported that his chronic anxiety made it very difficult for him to maintain his concentration for extended periods of time when around other people and that his hypervigilance made it difficult for him to maintain his attention and concentration in public. The provider noted that he experienced a significant decrease in his ability to establish and maintain effective relationships, to manage stress, and to effectively maintain his concentration and attention in order to allow him to adapt to changing circumstances in the workplace and his personal life. The provider opined that the Veteran was not capable of engaging in a substantial gainful occupation and was moderately to markedly limited in his ability to perform activities within a schedule and maintain regular attendance and the ability to work in coordination with or proximity to others without being distracted by them. 

On December 2019 VA PTSD examination, the Veteran reported some memory difficulty, but the examiner indicated that it was unclear how much impact his medical disorder (aneurysm) impacted his memory. He reported no problems with ADLs such as feeding, grooming, bathing, and walking. He related that he did not go far when he drove, had lost interest in fishing, experienced periodic forgetfulness, became impatient trying to learn new material, and helped his wife with house chores. The examiner opined that the Veteran's PTSD disability picture was best characterized as occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. He was administered the SLUMS examination, and it was noted that his score of 23/30 was suggestive of a mild neurocognitive disorder. 

On December 2019 VA sleep apnea examination, OSA was diagnosed. The Veteran reported that his snoring had decreased snoring with the CPAP machine but that he still experienced persistent daytime hypersomnolence. The examiner opined that the OSA would have some impact on his ability to work because of his mild daytime tiredness, and that he would have difficulty if he sought employment as a taxi driver. 

In a December 2019 private vocational expert evaluation, the provider opined that the impact of the Veteran's service-connected disabilities rendered participation in substantially gainful occupation infeasible. He related that the Veteran's anxiety caused him to become easily agitated and that he no longer had much of a desire to interact with people or develop effective social or working relationships. He indicated that the Veteran was moderately limited in such areas as the ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruption from psychologically based symptoms, but found that such combined limitations would not allow the Veteran to participate in a substantially gainful occupation. The provider further noted that the Veteran's ability to perform activities within a schedule, maintain regular attendance, and be punctual and his ability to work in coordination with or proximity to others without being distracted by them were markedly limited and opined that the totality of his limitations made substantially gainful employment infeasible. 

At the February 2021 virtual hearing, the Veteran testified that he could not concentrate on something more than a minute or two, that he did not interact well with strangers, essentially because he did not want to deal with the public, and that he did not know any jobs that he could do because he could not concentrate. He related that he would not be able to deliver packages because he lacked the confidence to drive in unfamiliar areas, and that he could not handle a job that only involved doing one task repeatedly all day because his mind wandered too much. The Veteran's attorney referenced the December 2019 vocational assessment and noted that he would have difficulty with social interaction, concentration, and appearing for work, and he indicated that although the Veteran might be able to do a menial task for a short period of time, he would not be able to maintain that employment for very long because he would miss work too often and be terminated. He cited to the October 2019 residual functional capacity assessment which indicated that the Veteran was markedly limited in ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances. 

The evidence of record reasonably shows that the Veteran's service-connected disabilities have been such that they precluded him from maintaining regular, substantially gainful employment. His PTSD and OSA as described impacted adversely on his ability to maintain both less strenuous sedentary and manual work because they limited his ability to concentrate and engage in a workplace. VA and private providers essentially agreed that the Veteran's ADLs were mildly to moderately affected by his service-connected disabilities and that his PTSD and OSA would have some level of impact on his ability to work. However, VA providers found that he was likely to be mildly to moderately impaired in a work environment that required the ability to sustain concentration and focus as normally found in most jobs when working in a solitary situation, and he was likely to be mildly to moderately impaired in a work environment that required a rigid adherence to a set work schedule (i.e., scheduled work hours), due to difficulty with his sleep schedule. In contrast, private providers opined that the Veteran's ability to perform activities within a schedule, maintain regular attendance, and be punctual and his ability to work in coordination with or proximity to others without being distracted by them were markedly limited and opined that the totality of his limitations made substantially gainful employment infeasible. Additionally, at the February 2021 virtual hearing, the Veteran testified that he did not know any jobs that he could do because he could not concentrate. He related that he would not be able to deliver packages because he lacked the confidence to drive in unfamiliar areas, and that he could not handle a job that only involved doing one task repeatedly all day because his mind wandered too much. 

It is reasonably shown that the Veteran's service-connected disabilities have resulted in functional limitations incompatible with regular substantially gainful employment. Resolving remaining reasonable doubt in the Veteran's favor, as required (see 38 C.F.R. § 4.3), the Board finds that a TDIU rating is warranted. 

[The effective date of the award is a downstream issue for the Agency of Original Jurisdiction to address in the first instance.]

 

 

GEORGE R. SENYK

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board J. Bayles, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.